IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN BRATHWAITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS CARROLL, BETTY BURRIS, | ) | |
| DAVID PIERCE, DAVID K. HOLMAN, | ) | |
| ANTHONY J. RENDINA, CATHY | ) | |
| MALAY, WILLIAM YODER, LARRY | ) | |
| SAVAGE, MARCELLO RISPOLI, | ) | Civil Action No. 04-1542 (GMS) |
| ROBERT WALLACE, DAVID PHILLIPS, | ) | |
| MATT STEVENSON, STEPHANIE | ) | |
| CARPENTER, BARBI THOMAS, EDWIN | ) | |
| NKWOPARA, LISE MERSON, FIRST | ) | |
| CORRECTIONAL MEDICAL, NURSE | ) | |
| KERA, MAJOR CUNNINGHAM, | ) | |
| LIEUTENANT GODWIN, SERGEANT | ) | |
| LOVETT, V. DUNN, DON OVERMEYER, | ) | |
| BOB HARRIS, DR. RAMAN, and AMY | ) | |
| WHITTLE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

## I.    INTRODUCTION

The plaintiff, Kevin Brathwaite ("Brathwaite"), is presently incarcerated at the Delaware

Correctional Center (the "DCC"), which is located in Smyrna, Delaware. On December 22, 2004,

Brathwaite filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The complaint alleges

that Warden Thomas Carroll ("Carroll"), Deputy Warden Betty Burris ("Burris"), Deputy Warden

David Pierce ("Pierce"), Major David Holman ("Holman"), Anthony Rendina ("Rendina"), Cathy

Malay ("Malay"), Lieutenant William Yoder ("Yoder"), Lieutenant Larry Savage ("Savage"),

Lieutenant Marcello Rispoli ("Rispoli"), Sergeant Robert Wallace ("Wallace"), Sergeant David

Phillips ("Phillips"), Sergeant Matt Stevenson ("Stevenson"), Sergeant Stephanie Carpenter ("Carpenter"), Sergeant Bambi Thomas ("Thomas"), correctional officer Edwin Nkowpara ("Nkowpara"), correctional officer Lise Merson ("Merson"), First Correctional Medical ("FCM"), and Nurse Kera ("Kera") (collectively, the "defendants") violated Brathwaite's Eighth and Fourteenth Amendment rights. On March 21, 2005, prior to serving any of the defendants, Brathwaite filed an amended complaint naming additional defendants and alleging further violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Brathwaite's amended complaint alleges that Major Charles Cunningham ("Cunningham"), Lieutenant Godwin ("Godwin"), Sergeant Lovett ("Lovett"), correctional officer V. Dunn ("Dunn"), correctional officer Don Overmeyer ("Overmeyer"), Nurse Bob Harris ("Harris"), and Dr. Raman ("Dr. Raman") violated his constitutional rights. Presently before the court is the defendants' motion to dismiss the allegations of the complaint and amended complaint against Carroll, Burris, Pierce, Cunningham, Godwin, Lovett, Dunn, and Overmeyer (collectively, the "moving defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, the court will grant the motion. The court will also permit Brathwaite to amend his complaint consistent with its discussion below.

## II.   BACKGROUND

The complaint alleges that, on October 9, 2004, several defendants, including Wallace, Phillips, Stevenson and Carpenter, physically assaulted Brathwaite with a dangerous weapon. (D.I.

---

[1] This opinion pertains only to those prison officials identified as the "moving defendants." The motion to dismiss, as well as some of the headings that are part of the memorandum filed in support of the motion mention Holman, Rendina, and Savage. Absent from the argument and analysis portions of the memorandum, however, is any discussion of the claims against them or why the claims against them must fail. Moreover, the prayer for relief asks the court to dismiss only the moving defendants from the case. As such, the court will address only the moving defendants in this opinion.

2

2, at 1.)  Brathwaite further alleges that nurse Kera denied him medical treatment for the injuries he received as a result of the assault.  (Id.)  Brathwaite next alleges that, on the same day, he informed Yoder, Kera, Thomas, and Phillips that he was feeling suicidal and that he "was going to kill himself if given the chance."  (Id.)  According to Brathwaite, his warning went unacknowledged, and Kera neglected her duties when she refused to contact the mental health department after his suicide threat. (Id.)

Additionally, Brathwaite alleges that Rispoli and several other officers assaulted him on October 22, 2004.  (Id.)  The complaint alleges that Brathwaite filed grievances regarding this assault, and the fact that he received no medical treatment after reporting it.  Brathwaite also alleges that he notified Carroll, Burris, Pierce, and Internal Affairs.  (Id.)  The complaint further states that the defendants involved in the assaults violated Brathwaite's constitutional right to be free from cruel and unusual punishment, as well as his right to receive medical treatment and mental health treatment.  (Id.)

Brathwaite next alleges that Nkowpara, Kera, Wallace, Phillips, Stevenson, Thomas, and Yoder conspired to file false reports and obstruct justice by "conspiring to cover up a crime."  (Id.) Brathwaite claims that he filed grievances regarding the aforementioned assaults and denial of medical treatment, but the grievance officer, Merson, "continuously gave fictitious reasons why [he] was not allowed to file grievances," thereby violating his constitutional rights.  (Id. at 2.)

Brathwaite's complaint further alleges that he received a disciplinary report for "false charges" brought against him.  (Id.)  According to Brathwaite, Savage, the hearing officer, denied him his right to due process when he refused to give him at least twenty-four hours notice of his disciplinary hearing on the matter.  (Id.)  He also claims that Savage refuse to investigate the charges

3

brought against him and denied him his right to provide a full statement regarding the charges. (Id.)

Additionally, Brathwaite alleges that he appealed Savage's determination to Rendina, who denied the appeal without an investigation and without questioning witnesses to the incident. (Id.) He claims that Rendina failed to provide him with a written answer to his appeal, and when he requested a copy, he received a letter from Malay, with a "falsified appeal decision" attached, stating that his appeal was denied. (Id.) Brathwaite has attached an affidavit to his complaint, which further details his claims.

On March 21, 2005, Brathwaite filed an amended complaint (D.I. 9), naming additional defendants, including Cunningham, Godwin, Lovett, Dunn, Overmeyer, Harris, and Dr. Raman. The amended complaint sets forth further allegations regarding constitutional violations that occurred from October 10, 2004 to February 24, 2005, when Brathwaite was housed in the infirmary. (Id. ¶ 15.) Specifically, the amended complaint alleges that several officers assaulted Brathwaite and retaliated against him for having the assault investigated. (Id. ¶ 17.) With respect to his claim of retaliation, Brathwaite alleges that officers would shakedown and search his cell three times a day, and that an officer would sit in front of his cell twenty four hours per day. (Id. ¶¶ 22-23.) Brathwaite further alleges that he was forced to sleep on the floor because officers confiscated his mattress. (Id. ¶ 24-25.)

The amended complaint alleges that Brathwaite was denied access to the courts because his legal materials were confiscated, he was told he could not exercise his right to the courts, and the DCC paralegal was instructed not to assist him with any legal matters. (Id. ¶¶ 18, 21.) Additionally, Brathwaite claims he was told that he could not receive mail from his family or friends. Nor was he allowed to receive newspaper and magazine subscriptions. (Id. ¶ 19.)

4

Brathwaite claims that he was subjected to cruel and unusual punishment, because he was only permitted to brush his teeth three times per week, resulting in "dental problems." (Id. ¶ 20.) He also claims that the nurses at the infirmary were instructed not to give him "anything." (Id. ¶ 26.)

Lastly, the amended complaint alleges that Brathwaite "was denied his right to file any grievances or utilize the grievance system in any way," between January 6, 2005 and February 24, 2005. (Id. ¶ 27.)

## III.   STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 183 (3d Cir. 1993). Thus, as in the case of a Rule 12(b)(1) motion, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.*, 838 F.2d 663, 666 (3d Cir.1988). In performing this task, however, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3rd Cir.1997). On the other hand, a court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt

5

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley*, 355 U.S. at 45-46).

Finally, the Third Circuit has held that a district court may not dismiss a complaint with prejudice, and must permit amendment, where a plaintiff can remedy the complaint by an amendment, unless the amendment would be inequitable, futile, or untimely. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004).

## IV.    DISCUSSION

### A.    Sovereign Immunity

The moving defendants first contend that they are entitled to Eleventh Amendment immunity for claims brought against them in their official capacities. Brathwaite's complaint and amended complaint seek to hold the moving defendants liable in their official capacities. The moving defendants, as officials of the DCC, are state officials acting under color of state law. *See Cespedes v. Coughlin*, 956 F. Supp. 454, 465 (S.D.N.Y. 1997). A suit against a state agency or state official in his or her official capacity is treated as a suit against the state. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is so because neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). While a state is normally entitled to sovereign immunity, Congress may have abrogated the state's immunity through a valid exercise of its power, or the state itself may have waived its immunity. *See Lavia v. Commonwealth of Pennsylvania*, 224 F.3d 190, 195 (3d Cir. 2000).

Neither of the two above-mentioned sovereign immunity exceptions are relevant here. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text

6

as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam*, 488 F. Supp. 775, 780 (D. Del. 1980) (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).  Such an express waiver may be made through clear constitutional or statutory language. *See Lavia*, 224 F.3d at 195.  Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh Amendment sovereign immunity.  *See  Ospina v. Dept. of Corr.*, 749 F. Supp. 572, 579 (D. Del. 1990).  Therefore, Delaware has not clearly waived its immunity.

Finally, Congress has not abrogated the states' immunity for claims under Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).  Since Delaware's immunity has not been waived or abrogated, the court will dismiss Brathwaite's claims against the moving defendants in their official capacities.

**B.     Individual Liability of the Moving Defendants under 42 U.S.C. § 1983**

Through their motion, the moving defendants contend that Brathwaite's claims against them should be dismissed because they are predicated on the theory of respondeat superior.  That is, the moving defendants contend that Brathwaite's complaint and amended complaint fail to allege personal involvement by any of them.  In response, Brathwaite asserts that he has sufficiently pled his civil rights violations.

The Third Circuit has held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  In other words, a plaintiff must allege and prove a causal connection between the defendants and the alleged wrongdoing in order to recover. *Rode*, 845 F.2d at 1207.  A plaintiff establishes a causal connection by showing that the defendants were personally

7

involved in the alleged wrongs through allegations of either personal direction or actual knowledge and acquiescence. *Id.* Finally, a plaintiff must allege personal involvement with particularity, stating the time, place, and persons responsible for the violations. *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).

Viewing the allegations of Brathwaite's complaint in a light most favorable to him, and in the context of the applicable law, the court concludes that he has not shown any evidence that the moving defendants were involved in, had personal knowledge of, or in any way acquiesced to any deprivation of his constitutional rights. Here, Brathwaite has alleged only the supervisory functions of the moving defendants. For example, Brathwaite's complaint states that he filed a grievance and wrote letters to the wardens, Carroll, Burris, Pierce, as well as Internal Affairs. Additionally, the complaint does not allege any conduct on the part of Cunningham, Godwin, Dunn, and Overmeyer, and the amended complaint alleges only the following: Cunningham was the "security superintendent" at the DCC at the time the incidents occurred; Godwin is the "Area Supervisor" at the DCC, and was the "Area Lieutenant" at the time the incidents occurred; Dunn is a correctional officer at the DCC and was working at the time the incidents occurred; and Overmeyer is a correctional officer at the DCC and was working at the time the incidents occurred. As previously discussed, a Section 1983 defendant cannot be held liable under a respondeat superior theory. *See Fagan v. City of Vineland*, 22 F.3d 1283, 1291 (3d Cir. 1994). Moreover, grievances are not enough to impute knowledge to the moving defendants. *Rode*, 845 F.2d at 1208 (noting that if the filing of a grievance was enough to impute liability to a government official, it would permit personal liability

8

in most cases).  Accordingly, the court will dismiss his claims against the moving defendants.[2]

### C.   Brathwaite's Remaining Claims Alleged in His Amended Complaint[3]

Even though the court will dismiss Brathwaite's claims against the moving defendants under

respondeat superior, it feels obligated to address his amended complaint in order to flesh out any

potential claims for which Brathwaite may be able to recover.  After having reviewed the amended

complaint in a light most favorable to Brathwaite, the court construes it as setting forth potential

claims regarding assault, retaliation, denial of access to the courts, interference with mail, cruel and

unusual punishment, and lack of an adequate grievance system.  The court will address each of these

potential claims in turn.

1.     Assault

Brathwaite alleges that, on December 15, 2004, he was sleeping on the floor of his infirmary

cell when he was assaulted with a dangerous weapon by three correctional officers.  Brathwaite does

not provide any additional information regarding the alleged assault.   Given the brevity of

Brathwaite's claim, the court is not sure whether he is attempting to state a claim for cruel and

unusual punishment based on the alleged assault, or a supplemental state claim for assault.  Because

Brathwaite potentially can state a claim for cruel and unusual punishment or assault, the court will

---

[2] The motion to dismiss also asks the court to dismiss Brathwaite's claims against Lovett because they are based on the theory of respondeat superior.  The court cannot accede to this request, however, because Brathwaite has not yet effected service on Lovett.  (See D.I. 45.)

[3] The court will not address the merits of Brathwaite's allegations in the original complaint because he sets them forth clearly, linking specific defendants to the complained of conduct, and none of the defendants involved in the incidents have moved to dismiss the complaint.  The court will address Brathwaite's amended complaint because it potentially sets forth certain constitutional violations, but does not do so with clarity and does not link specific defendants to the complained of conduct.

permit him to amend this claim to allege with more particularity the incident that occurred on December 15, 2004, and the correctional officers allegedly involved in the incident.

2.     Retaliation

Brathwaite alleges that he experienced numerous retaliatory actions from the DCC staff as a result of requesting and receiving an internal affairs investigation into the December 15, 2004 assault. Brathwaite first alleges that from November 9, 2004 through February 24, 2005, officers retaliated against him by posting an officer outside his cell twenty four hours a day and searching his cell three times a day. Brathwaite next alleges that officers retaliated against him by forcing him to sleep on an ice cold floor, completely naked, and with no mattress.

In *Rauser v. Horn,* the Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed in that claim. *See Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). The court established a three prong test for determining whether retaliation has occurred. First, the prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. *See id.* at 333 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 389 (6th Cir. 1999)); *see also Drexel v. Vaughn,* Civ.A.No. 96-3918, 1998 WL 15178, at * 7 (E.D. Pa. Apr. 2, 1998) (determining that prisoner had engaged in constitutionally protected conduct before proceeding with retaliation inquiry). Next, the prisoner-plaintiff must show that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah v. Sieverling*, 229 F.3d 220, 225 (3d Cir. 2000)). A prisoner-plaintiff can satisfy this prong by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See id.* The last *Rauser* prong requires a prisoner-plaintiff to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him.

10

The court employs a burden-shifting regime to determine whether a causal link exists. The prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id.* (citing *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *See id.* If the defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id.* at 334.

In the present case, even assuming that Brathwaite has met the first two prongs of the *Rauser* test, his claim must fail because the moving defendants would have taken the same steps regardless of whether Brathwaite reported the assault and requested an investigation. The moving defendants contend that they placed Brathwaite in the infirmary on suicide watch after he attempted to hang himself. As a result of being placed on suicide watch, Brathwaite was subject to observation twenty fours hour per day, and was prevented from possessing more than a suicide mattress, gown, and suicide blanket in his cell. The moving defendants also contend that correctional officers conducted routine cell shakedowns in order to uncover contraband items. Additionally, in conducting the shakedowns, the officers confiscated several contraband items from Brathwaite, including cell phones, a battery charger, and non-commissary food. Here, the moving defendants have a legitimate penological interest in guarding inmates against suicide. Furthermore, the court finds that keeping a close eye on an inmate who has already threatened and attempted to commit suicide by limiting his possessions and conducting cell shakedowns to confiscate contraband is reasonably related to that interest. As such, the court will dismiss Brathwaite's retaliation claim.

11

3.      Access to Courts

Brathwaite alleges that he was told that he would not be permitted to exercise his right to the

courts or an attorney.  (D.I. 9 ¶ 18.)  He also alleges that an officer told him she had been ordered

to confiscate all of his legal material and paperwork.  (*Id.*)  Lastly, Brathwaite alleges that the DCC

paralegal was instructed not to assist him with any legal matters.  (*Id.* ¶ 21.)

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds*

*v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must five inmates access to law libraries

or direct legal assistance).  In order to state a claim that he was denied his right of access to the

courts, Brathwaite must show that he was actually injured by such interference. *Lewis v. Casey*, 518

U.S. 343, 349 (1996); *Oliver v. Fauver*, 118 F.3d 175, 178 (3d Cir. 1997).

Here, Brathwaite has not alleged that he was "actually injured" by any denial of his access

to the courts.  Moreover, Brathwaite has not alleged that any particular defendant has denied him

access to the courts, as his amended complaint states only that "an officer" told him that he was no

longer allowed to exercise his legal rights.  The court, therefore, will dismiss this claim.  However,

the court recognizes that Brathwaite potentially has a cognizable claim for denial of his access to the

courts.  Thus, the court will permit Brathwaite to amend his complaint in order to include allegations

regarding which officer allegedly denied him access to the courts, and how he was injured by the

denial.

4.      Interference with Mail

Brathwaite alleges he was told that he was not allowed to receive mail from family and

friends, or subscriptions to newspapers and magazines.  Inmates have a limited liberty interest in

their mail under the First and Fourteenth Amendments.  As such, prison officials may restrict an

inmate's constitutional right to send and receive mail only for a legitimate penological interest. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975), *cert. denied*, 424 U.S. 973 (1976).

In the present case, Brathwaite alleges that he was not allowed to receive mail from October 10, 2004 through February 24, 2005. This allegation, if proven, potentially could demonstrate a pattern of actual and deliberate interference with Brathwaite's mail. However, as with his access to the courts claim, Brathwaite fails to discuss who deprived him of his right to mail, alleging only that he "was told" he could not receive mail. Accordingly, the court will dismiss this claim, but grant Brathwaite leave to amend in order to state this claim with more particularity, and specify which prison official allegedly deprived him of his mail.

5.    Cruel and Unusual Punishment

While not stated with clarity, Brathwaite appears to allege claims for cruel and unusual punishment. Specifically, Brathwaite alleges that, from October 10 2004 through February 24, 2005, he was permitted to brush his teeth only three times per week. According to Brathwaite, this caused him to develop dental problems. Brathwaite further alleges that, from January 6, 2005 through February 24, 2005, the nurses in the infirmary "were told" not to give him "anything." (D.I. 9 ¶ 26.)

The Eighth Amendment of the United States Constitution governs penal measures and prison conditions, and prohibits use of penal measures and existence of conditions which violate civilized standards and concepts of humanity and decency. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976). In the prison context, however, "[n]ot every governmental action affecting the interest or well-being

13

of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). Only those actions that impose an unnecessary and wanton infliction of pain rise to the level of cruel and unusual punishment. *Id.*

To recover for the denial of medical care under the Eighth Amendment, Brathwaite must show that a prison official or employee was deliberately indifferent to his serious medical needs or acted with reckless disregard for his condition. *See Miller v. Correctional Medical Sys., Inc.*, 802 F. Supp. 1126, 1130 (D. Del. 1992). The deliberate indifference prong is met only if the prison official "knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rouse*, 182 F.3d at 197. The plaintiff must show a sufficiently culpable state of mind which demonstrates an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Rouse*, 182 F.3d at 197. Mere allegations of negligence do not meet the pleading standards for deliberate indifference. *See Estelle*, 429 U.S. at 105-106. Nor can the claim rest solely on the prisoner's dissatisfaction with the medical care he has received. *Id*. at 107.

An inmate's condition is "serious" when it is so obvious that an ordinary person would easily recognize the need for a doctor's attention or when a physician has concluded that treatment is required. *See Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir.1987). The "seriousness" prong is met also if the effect of denying or delaying care results in wanton infliction of pain or a life-long handicap or permanent loss. *Id*. In addition, the "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death." *See Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir.1991).

14

Here, Brathwaite's allegations are insufficient to meet the deliberate indifference standard. Brathwaite alleges that he was permitted to brush his teeth only three times per week, resulting in unspecified "dental problems." Given Brathwaite's scant allegations, the court cannot find that the prison officials acted with deliberate indifference to his health and safety. At most, Brathwaite has alleged that some unspecified prison officials were negligent in not allowing him to brush his teeth more than three times per week. As previously discussed, however, mere allegations of negligence are not sufficient to meet the pleading standard for deliberate indifference.

The court also concludes that Brathwaite's allegations that the nurses were told not to give him anything do not rise to the level of deliberate indifference. First, Brathwaite does not specify who told the nurses not to administer him anything. Additionally, it is not clear from Brathwaite's amended complaint whether the nurses refused to give him anything. Moreover, even if the nurses did not administer any medication to Brathwaite, he has not alleged that their failure resulted in any harm or injury. Based on the foregoing discussion, the court will dismiss Brathwaite's cruel and unusual punishment claims alleged in the amended complaint.

6.      Lack of an Adequate Grievance System

Brathwaite alleges that, from January 6, 2005 through February 24, 2005, he was denied his right to file any grievances or utilize the grievance system in any way. In the Third Circuit, inmates "do not have a constitutionally protected right to the prison grievance process." *Burnside v. Moser*, 138 Fed. App'x 414, 416 (3d Cir.2005) (not precedential) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Therefore, "'[i]f the state elects to provide a grievance mechanism, violations of its procedures do not . . . give rise to a § 1983 claim.'" *Hoover*, 886 F. Supp. at 418-19 (quoting *Spencer v. Moore*, 638 F. supp. 315, 316 (E.D. Mo. 1986)). Accordingly, the court will dismiss

15

Brathwaite's claim regarding his access to the prison grievance system.


Dated: March 29, 2006

_____
UNITED STATES DISTRICT JUDGE



FILED

MAR 2 9 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KEVIN BRATHWAITE,                        )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )
                                         )
THOMAS CARROLL, BETTY BURRIS,            )
DAVID PIERCE, DAVID K. HOLMAN,           )
ANTHONY J. RENDINA, CATHY                )
MALAY, WILLIAM YODER, LARRY              )
SAVAGE, MARCELLO RISPOLI,                )      Civil Action No. 04-1542 (GMS)
ROBERT WALLACE, DAVID PHILLIPS,          )
MATT STEVENSON, STEPHANIE                )
CARPENTER, BARBI THOMAS, EDWIN           )
NKWOPARA, LISE MERSON, FIRST             )
CORRECTIONAL MEDICAL, NURSE              )
KERA, MAJOR CUNNINGHAM,                  )
LIEUTENANT GODWIN, SERGEANT              )
LOVETT, V. DUNN, DON OVERMEYER,          )
BOB HARRIS, DR. RAMAN, and AMY           )
WHITTLE,                                 )
                                         )
            Defendants.                  )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that :

1.     The moving defendants' Motion to Dismiss for Failure to State a Claim (D.I. 28) is

       GRANTED.

2.     The plaintiff's claims against Carroll, Burris, Pierce, Cunningham, Godwin, Dunn,

       and Overmeyer shall be dismissed with prejudice.

3.     The plaintiff's retaliation, cruel and unusual punishment, and lack of an adequate

       grievance system claims alleged in the amended complaint (D.I. 9) shall be dismissed

with prejudice.

4.     The plaintiff shall be permitted to amend the complaint as directed in the court's

Memorandum.  The amended complaint shall be filed within forty-five (45) days

from the date of this Order.

Dated: March 29 , 2006

_____
UNITED STATES DISTRICT JUDGE



2