IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Kevin Brathwaite    ) | |
|     Plaintiff    ) | |
| ) | |
| v.    ) | Civil Action No. 04-1542 (GMS) |
| ) | |
| ) | |
| Thomas Carroll, Warden, et al,    ) | |
|     Defendants    ) | |

**DEFENDANTS' HOLMAN, RENDINA, MALAY, SAVAGE, RISPOLI, and MERSON MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT**

**STATEMENT OF FACTS**

1. Kevin Brathwaite, Plaintiff, is an inmate incarcerated within the Delaware Department of Correction (hereinafter "DOC") at the Delaware Correctional Center (hereinafter "DCC") in Smyrna, Delaware.

2. On or about December 22, 2004, Brathwaite filed a Complaint in the District Court of Delaware against several Department of Correction personnel, including David Holman, Anthony Rendina, Cathy Malay, Larry Savage, Marcello Rispoli, and Lise Merson, (hereinafter "Answering Defendants") alleging causes of action pursuant to 42 U.S.C. §1983. (D.I. 2, Complaint, *passim*).

3. Bratwaite is alleging that each of these defendants above-referenced has in some way violated his constitutional rights. For the purpose to decide Defendants motion to dismiss, all factual allegations surrounding Brathwaite's complaint have been detailed in a Memorandum issued by this Honorable Court along with an April 7, 2006 Order, and Defendants will not restate the facts, except as necessary to address a specific claim

against Answering Defendants. (D.I.63). Since Brathwaite has filed various items with this Honorable Court asserting his claims of deprivations committed by the Answering Defendants for acts commencing October 9, 2004, these Defendants respond, in turn, to the claims against them.

A. <u>**Standard of Review**</u>

In the courts of the Third Circuit the dismissal standard under Fed. R. Civ. P. 12 (b)(6) as to "specific allegations of unconstitutional conduct" requires a showing "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Haines v. Kerner*, 404 U.S. 519 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss factual allegations of the complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief can be granted under any set of facts which could be proved. Reasonable factual inferences will be drawn to give support to the pleader. *See Piecknick v. Pennsylvania*, 36 F. 3d 1250, 1255 (3d Cir. 1994).

However, in a case brought by a state prisoner alleging civil rights violations and contains only vague and conclusory claims with no specific allegations of unconstitutional conduct, dismissal pursuant to Fed. R. Civ. P. 12 (b) (6) for failure to state a claim upon which relief can be granted is appropriate.

Answering Defendants refer to matters outside the pleadings therefore the court may treat its motion to dismiss as one for summary judgment. See Fed. R. Civ. P. 12 (b) (6); *Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000) (consideration of matters beyond the complaint coverts a motion to dismiss into a motion for summary judgment).

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of proof is on the moving party to demonstrate the absence of material issues of fact, and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. However, once the moving party advances evidence in support of its contentions, the nonmoving party must go beyond the pleadings and introduce affidavits and other evidence that will create a genuine issue of fact in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In this case, because there is no genuine issue of material fact, Defendants are entitled to judgment as a matter of law.

**B. Defendants Holman, Rendina, Malay, Savage, Rispoli, and Merson are immune from liability in their official capacities**

1. The Eleventh Amendment bars suit against David Holman, Anthony Rendina, Cathy Malay, Larry Savage, Marcello Rispoli, and Lise Merson in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) ("[I]n the absence of consent, a suit [in federal court] in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Brathwaite attempts to sue the above-named state officers for alleged violations of his civil rights. As the court has recently reiterated, a suit against a state agency or state official in his or her official capacity is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accepting that the state officials acting

in their official capacities are not "persons" under § 1983, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the court acknowledged that neither Delaware statutory nor constitutional law expressly waived the state's Eleventh Amendment immunity by consenting to federal jurisdiction. *See Ospina v. Dept. of Corr.*, 749 F. Supp. 572, 579 (D. Del. 1990). Moreover, Congress has not abrogated Delaware's immunity for claims under section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Brathwaite's claims against Holman, Rendina, Malay, Savage, Rispoli, and Merson in their official capacities must be dismissed.

**C.    Brathwaite's alleged deprivation of his Eighth Amendment right to be free from cruel and unusual punishment asserted against Defendants must fail**

    1.    Defendant Holman did not have actual knowledge of or acquiesce in an assault on Brathwaite.

        a)    David Holman, Major, is the security superintendent at the Delaware Correctional Center. Brathwaite alleges that he filed a grievance concerning an alleged assault against him by correction officers he claims occurred on or about October 9, 2004. He asserts that his grievance was forwarded to Major Holman for a "follow-up investigation." However, Brathwaite alleges that "[he] was never questioned to give a statement, nor did [he] have a chance to give the names of witnesses. Major Holman did absolutely nothing." (See Original Complaint). Although he states that officers assaulted him, he provides no detail on the circumstances to support his claim that Holman deprived him of a constitutional right. He is completely silent as to any specific acts committed by Major Holman.

        b)    Although Brathwaite alleges that the grievance filed concerning

the alleged assault was forwarded to Holman, his complaint does not describe when, where, how or whether, in fact, Holman had knowledge of, acquiesced in, or was even remotely responsible for an assault on him. Moreover, Brathwaite certainly has not demonstrated that Holman played any role, directly or indirectly, or disregarded a risk of harm to him. (See Complaint, *passim*). The only reference to Major Holman to follow-up on Brathwaite's Grievance number 8303 is the handwritten notation on the top of the grievance form filed by Brathwaite on August 5, 2005 in District Court. (D.I 33).

      c)      On October 9, 2004, after correctional officers subdued Brathwaite, who refused to obey orders and attempted to assault them, a disciplinary report was prepared. (See Disciplinary Report 1013422 attached as Exhibit "A"). Based on the disciplinary report, Brathwaite was notified that a hearing would be held on the charges filed against him. (Id.) Brathwaite refused to sign the Notice of Disciplinary Hearing. (See Notice of Disciplinary Hearing attached as Exhibit "B"). Brathwaite was administratively transferred to a more restrictive setting pending review. (See Administrative Transfer attached as Exhibit "C"). On or about October 18, 2004, a disciplinary hearing was held on the following charges: possession of unauthorized clothing, assault, disorderly and threatening behavior, possession of dangerous contraband, creating a health, safety of fire hazard, failing to obey an order, and possession of non-dangerous contraband. (See Disciplinary Hearing Decision attached as Exhibit "D"). Founded on the reports and witness statements provided hearing officer Lieutenant Larry Savage determined Brathwaite guilty of all charges except possession of dangerous contraband. (Id.)

      d)      On or about October 21, 2004, Brathwaite filed a written appeal of

his disciplinary decision. (See Disciplinary Hearing Appeal Form attached as Exhibit "E"). Brathwaite's appeal form was sent to Anthony Rendina, Inmate Classification Administrator, for further review. (Id.) Brathwaite's appeal was denied and the hearing officer's decision was affirmed. (See Appeal Decision attached as Exhibit "F").

  2. Brathwaite's original Complaint attempts to state a claim of cruel and unusual punishment as well as a violation of his substantive due process rights under the Eighth and Fourteenth Amendments. (Complaint, *passim*). However, assuming *arguendo* that all of the well pleaded factual allegations in his Complaint are accepted as true, he fails to allege any set of facts which would support a claim of Holman's "deliberate indifference" to need for protection. See, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). In his complaint he merely asserts that Holman never questioned him concerning the alleged incident of October 9, 2004. Brathwaite argues that a notation on the top of his grievance puts Holman on notice of a substantial risk of harm to him. Unfortunately, this bald assertion does not present an adequate sets of facts from which a trier of fact could reasonably provide relief against Holman for failing to provide the inmate with adequate protection.

> In a conditions of confinement case, an analysis of whether a prison official violated the Eighth Amendment must begin with the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In order to establish an Eighth Amendment violation by a prison official, two requirements must be met. First, the alleged deprivation must be objectively "sufficiently serious." *Id.* (citations omitted). Thus, where the alleged violations can be described as a failure to prevent harm, the inmate must show that his or her conditions of incarceration posed a "substantial risk of serious harm." *Id.* Second, the prison official's state of mind must be one with deliberate indifference" to the inmate's health or safety. *Id.*

*Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1386 (D. Del.1997). Brathwaite does not set out facts sufficient for a reasonable jury to determine that his conditions of

confinement posed a substantial risk of serious harm and that Holman acted with deliberate indifference to Brathwaite's health and safety.

3.  The common thread to cases in which potential liability has been found for the conduct of prison officials in incidents involving an excessive risk to an inmate's health or safety is a specific awareness of a threat to a specific inmate by the prison official. Absent a specific threat against Brathwaite, Holman had no basis for taking action different than the actions taken in the disciplinary hearing process.

4.  Rispoli's Use Of Force Was Reasonable Under The Circumstances

In an excessive force case, the pivotal inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). *See also Whitley v. Albers*, 475 U.S. 312, 319 (1986). The court must consider: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of the injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and 5) any efforts made to temper the severity of the forceful response. *Whitley*, 475 U.S. at 321. The extent of the threat to the safety of the staff and inmates, as perceived by reasonable officials on the basis of facts known to them, must be considered in assessing the use of force. *Hudson*, 503 U.S. at 7.

The use of *de minimis* force does not constitute cruel and unusual punishment within the meaning of the Eighth Amendment unless it is "of a sort repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327. "There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable

person could conclude that a corrections officer acted maliciously and sadistically." *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002).

This Court has previously addressed inmate excessive force claims in the context of the use of capstun or mace. In *Johnson v. Berezansky*, 2005 WL 1026723, at *1 (D. Del. April 28, 2005) (attached hereto as Exhibit G), plaintiff inmate became involved in a dispute with defendant correctional officer in the chow hall, was forced to throw away his food tray and return to his cell. After he was locked into his cell, the plaintiff began to bang on the door and complained about missing his meal. Defendant repeatedly told plaintiff to stop calling out and banging, but plaintiff refused to comply with this request. Defendant then opened plaintiff's cell to speak with him. There was a factual dispute as to whether plaintiff then made a threatening movement towards defendant. It was undisputed that, after opening the cell, defendant sprayed plaintiff with cap-stun. *Id.*

The court concluded that plaintiff's disorderly conduct was sufficient to create a need for defendant to use force to quell plaintiff's behavior. *Id.* at *3. In reaching this conclusion, the court noted that spraying plaintiff with cap-stun was in proportion to the need to stop him from causing a disturbance in the facility. *Id.* at *4. The court also observed that defendant was in the best position to perceive whether plaintiff posed a threat to the safety and security of the staff and inmates. *Id.*

In *Wright v. Snyder*, 2002 WL 1821583, at *1 (D. Del. July 8, 2002) (attached hereto as Exhibit H), defendant correctional officers were conducting strip searches of inmates for drugs, weapons and contraband. Plaintiff claimed that he complied with directions but made a sarcastic comment to defendants. Defendants claimed that plaintiff stated that he would not comply and moved towards them in a threatening manner, at

8

which time he was sprayed once with cap-stun.  Shortly thereafter, plaintiff was treated by a nurse.  The medical notes indicated that "no other trauma was seen . . . denies other injuries." *Id.*

The court found that plaintiff's actions demonstrated that he did not obey defendants' orders to permit a body cavity search for contraband.  *Id.* at *3.  Defendants' claim that plaintiff lunged towards them stated a reasonably perceived threat justifying use of force.  The amount of force used, pepper spray, was reasonably related to the need for force because defendants believed that plaintiff was moving in a threatening manner, and the purpose of the pepper spray was to subdue unruly subjects.  Finally, defendants tempered the severity of their response to plaintiff's actions by taking him to see a nurse after he was sprayed.  *Id.*  The court granted defendants' motion for summary judgment.  *Id.* at *4.

In *Wilson v. Reinhart*, 2003 WL 21756393 (D. Del. July 29, 2003) (attached hereto as Exhibit I) defendant correctional officer became involved in a dispute with plaintiff in the chow hall.  *Id.* at *1.  Plaintiff then returned to his cell.  Plaintiff alleged that, shortly thereafter, defendant came to his cell and attempted to instigate a physical confrontation, and when he did not respond, she sprayed mace into his face and locked him into his cell.  *Id.*

Defendant officer claimed that when plaintiff returned to his cell, he was yelling and kicking his cell door.  Defendant asked plaintiff's cellmate to try to calm plaintiff and also asked plaintiff if he would like to talk to a counselor.  In response, plaintiff moved towards defendant in a hostile manner, at which time she sprayed him and called for backup.  *Id.*

9

Plaintiff was then seen by medical. The medical report indicated that plaintiff's respiration was even and non-laboring, his vital signs were stable and there was no sign of trauma. *Id.* at *2.

The court found that because plaintiff admitted that he may have been disorderly in interacting with defendant in the chow hall, there was a need for the use of force. *Id.* at *4. "Although it is disputed whether or not plaintiff threatened [defendant], plaintiff's disorderly conduct was sufficient to create a need for [defendant] to use force to alleviate the situation." *Id.*

Because the force used was minor, there was a correlation between the need for force and the force actually used. "Spraying plaintiff with mace was in proportion to the need to stop plaintiff from causing a disturbance in the prison. Even if, as plaintiff claims, he did not threaten [defendant] and only acted disorderly, her response was reasonable under the circumstances." *Id.* Defendant used only sufficient force to gain control of the situation and call for backup. Further, plaintiff failed to show more than a *de minimis* injury. *Id.* at *5.

Finally, the court observed that great deference is given to prisons in adopting and implementing policies designed to maintain order, discipline and security. *Id.* "[Defendant] was in the best position to perceive any threat to her safety or the security of the prison by plaintiff's behavior." *Id.* The court held that, in the absence of evidence defendant acted maliciously or sadistically, plaintiff failed to state a claim. *Id.*

In this case, under the *Whitley v. Albers* factors, the evidence shows that any force against Braithwaite was used in a good-faith effort to prevent Brathwaite from harming himself or others and not maliciously and sadistically to cause harm.

Brathwaite admits that after he attempted suicide by hanging himself in his cell, he was placed in the infirmary on suicide watch. (D.I. 2, Brathwaite affidavit). He states that Nurse Holly told Lietenant Rispoli to "take all [his] sheets and mattress." Id. Brathwaite's conduct in trying to hang himself clearly created a need to take away a material objects in his cell to prevent further injury. Brathwaite further contends that on May 22, 2004, he was awakened by four officers to conduct a cell search. Id. Brathwaite alleges that these unknown officers entered his cell and began to strike his face with forearms and his body with punches and knees. Id. Brathwaite claims that the only officer that he recognized was Lt. Rispoli. Id. Brathwaite states "of the four officers that entered my cell, [he] was assaulted by three of them. Id. Brathwaite further alleges that Rispoli said, "you think you are so smart, you are not so smart; you are just as dumb as the rest of these spooks." Id. Brathwaite claims that he filed a grievance and an investigation was conducted. Id. Brathwaite's complaint offers no further detail concerning this matter.

Moreover, the documented information and record before this court demonstrates that the brief use of cap-stun was in proportion to the need to stop Brathwaite from injuring himself and others. Rispoli was in the best position to assess whether Braithwaite posed a threat to the safety of himself or others. The severity of any use of force was tempered by the fact that Brathwaite was seen by medical whenever force was used. Further, any injury sustained by Brathwaite was *de minimis* as documented in medical records.  Thus, under the *Whitley v. Albers* factors, Rispoli is entitled to judgment as a matter of law.

**D.   Brathwaite's alleged deprivation of his Due Process rights asserted against Defendants Merson, Savage and Rendina must fail**

11

1. Defendant Merson, Inmate Grievance Chairperson did respond to Brathwaite's numerous grievances that he filed after October 9, 2004. (Complaint, *passim*). Brathwaite's complaint outlines how certain notations were made on the reverse side of his grievances in response to the IGC receipt. However, Brathwaite did not agree with the determinations made when he was informed that the relief that he requested was not available through the grievance procedures. Although Brathwaite asserts that Merson "continuously gave fictitious reasons why [he] was not allowed to file grievances," he cannot demonstrate that he has a constitutionally protected right to the prison grievance procedure. *See, Hoover v. Watson*, 886 F. Supp. 410, 418-19 (1995). In addition, Brathwaite cannot demonstrate that Merson's "refusal to delegate his grievances" compromised his right of access to the courts. Therefore, Brathwaite's claim against Merson does not give rise to a section 1983 claim and must be dismissed.

2. Defendant Savage presented Brathwaite with a written notice of disciplinary charges filed against him, and an opportunity to present his views at a hearing, along with a right appeal, if necessary. To state a claim for a violation of the Fourteenth Amendment Due Process Clause, a plaintiff must allege: (1) that he or she was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected him, or caused him to be subjected to this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that he or she suffered an injury as a result of this deprivation without due process. *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir.1989). Brathwaite's due process claim as it relates to the Defendant Savage denying adequate notice of disciplinary hearing and disciplinary appeal process is without merit. (D.I. 2).

      3.      Moreover, Brathwaite has failed to set forth specific evidence showing that a Delaware statute or DCC rules and regulations afford him a constitutionally protected liberty interest. Brathwaite has no greater right to a disciplinary hearing different than that which he was provided. Notwithstanding prison rules and regulations outline the purposes and objectives of the Penal Code as it relates to prisoner discipline there is no genuine issue for trial. A prisoner's due process rights are triggered only when he is subjected to punishment that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995); *see also*, *Abdul-Akbar v. Department of Correction*, 910 F. Supp. 986, 1003 (D. Del. 1995), *aff'd*, 111 F.3d 125 (3d Cir.1997).

      4.      Department of Correction records, contained as exhibits attached to this motion reveal that Brathwaite received disciplinary charges based on his conduct. Also, Brathwaite was presented with a hearing, and received written decision of the hearing. Brathwaite was permitted to file an appeal of the decision. Finally, the amount of time Brathwaite was placed in confinement, 15 days in disciplinary segregation, was no more restrictive than his sentence imposed, and did not give rise to the level of "atypical and significant hardship" defined by *Sandin* and its progeny.

      5.      Defendant Rendina, likewise having found no reviewable issues raised by Brathwaite's appeal of his transfer to more restrictive confinement, affirmed the hearing officer's decision. (Exhibit Rendina Affidavit attached as Exhibit "J"). *See, Jackson v. Brewington-Carr*, No. 97-270-JJF, 1999 WL 27124 (D. Del.1999) (Delaware statutes and regulations do not provide inmates with a liberty interest in remaining free from administrative segregation or from a particular classification).

**D. <u>Malay has no personal involvement with Brathwaite's claims of alleged wrongs against him.</u>**

Brathwaite fails to allege how Defendant Malay was personally involved with any alleged constitutional violations. Without personal involvement in alleged constitutional violations, Defendant Malay cannot be held liable. *Rhode v. Dellarcipete*, 845 F.2d 1195, 1207 (3d Cir. 1988). It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrong. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* Under 42 U.S.C §1983, an individual cannot be held liable in the absence of personal involvement or knowing acquiescence in the alleged deprivation. *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974). As aforementioned, Brathwaite fails to identify how Malay participated in or was cognizant of the events which he claims deprived him of constitutional rights. Brathwaite's complaint is completely devoid of any cognizable §1983 claim against Defendant Malay. Brathwaite does not, and cannot honestly prove that Malay was involved in or responsible for directing an assault on him, or depriving him of adequate medical care. It is imprudent for Brathwaite to associate responsibility with defendant Malay in this action without alleging that they she was personally involved in the alleged violation of his rights. He does not state with particularity how she was personally involved in or directed wrongdoing against him. As such, any purported complaint against her must be dismissed. (See Malay Affidavit attached as Exhibit "K").

**E. <u>No respondeat superior liability</u>**

9. In addition, assuming that Braithwaite may be attempting to hold defendants liable based upon their supervisory positions, it is well established that liability under 42 U.S.C.§1983 may not be predicated upon a theory of *respondeat superior*. *Rizzo v. Goode,* 423 U.S. 362 (1976); *Gay v. Petsock*, 917 F.2d 768 (3d Cir. 1990); *Heine v. Receiving Area Personnel,* 711 F.Supp. 178 (D.Del. 1989). To hold defendants liable, plaintiff must: 1) identify with particularity what defendants failed to do that demonstrates deliberate indifference: and 2) demonstrate a close causal relationship between the identified deficiency and Plaintiff's ultimate injury. *Sample v. Diecks*, 885 F. 2d 1099, 1118 (3d Cir. 1989); *City of Canton v. Harris*, 489 U.S. 378 (1989). Brathwaite has failed to show that defendants exhibited deliberate indifference, or any other such acts which were related to any alleged injury which plaintiff claims he suffered. Accordingly, it is not surprising that Brathwaite fails to demonstrate any affirmative role on the part of the defendants that is anyway related to a constitutional deprivation.

10. Contrary to Brathwaite's claims that Holman did not investigate his claims and that he was not permitted to give a full statement concerning the alleged assault when Savage conducted the disciplinary hearing, that Rendina wrongfully denied his appeal, that Malay told him verbally that his appeal had been denied, and the Merson routinely denied his grievances, Defendants assert that the exhibits attached demonstrate that Brathwaite was accorded due process. The exhibits also demonstrate that Brathwaite repeatedly claimed to want to harm himself. As a result, Brathwaite was housed in the infirmary for an extended period of time and items, such as bed sheets, shoelaces, and writing instruments were restricted. The court has noted that Brathwaite continued to be

15

found in possession of contraband as the officers conducted routine cell shakedowns. Brathwaite has not presented any evidence to substantiate his claims of assault, or that these defendants violated any of his constitutional rights.

### **CONCLUSION**

There being no arguable legal or factual basis for Brathwaite's claims against Defendants Rendina, Savage, Malay, Merson, Rispoli, and Holman, Federal Rule of Civil Procedure 12(b) (6) mandates dismissal of Brathwaite's claims for failure to state a claim on which relief can be granted.

**WHEREFORE** for the foregoing reasons, Defendants Rendina, Savage, Malay, Merson, Rispoli, and Holman request this Court enter an order for dismissal, with prejudice, of Brathwaite's claims in their favor

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D.3879
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
ophelia.waters@state.de.us

Dated: April 12, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Kevin Brathwaite, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1542-GMS |
| ) | |
| Thomas Carroll, Warden, et al., ) | Trial by Jury Demanded |
| ) | |
| Defendants. ) | |

## **ORDER**

AND NOW, this _____ day of _____, 2006, the Motion To Dismiss For Failure to State a Claim filed by the Defendants, Rendina, Savage, Malay, Merson, Rispoli, and Holman in the above-captioned matter having been duly considered, and any opposition thereto, is granted; and,

IT IS ORDERED that all claims against Rendina, Savage, Malay, Merson, Rispoli, and Holman be dismissed with prejudice.

                                                                                   _____
                                                                                   The Honorable Gregory M. Sleet, Judge
                                                                                   United States District Court

17

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on April 12, 2006, she caused the attached *Defendants' Rendina, Savage, Malay, Merson, Rispoli, and Holman Motion to Dismiss/Summary Judgment with their Memorandum of Points and Authorities In Support* to be delivered to the following persons in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Kevin C. Brathwaite
SBI #315294
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

✓ Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
ophelia.waters@state.de.us