IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Kevin Brathwaite, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1542-GMS |
| | ) |
| Thomas Carroll, Warden, et al., | ) Trial by Jury Demanded |
| | ) |
| Defendants. | ) |

**DEFENDANT VIOLET DUNN'S OPENING MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF
HER MOTION TO DISMISS/SUMMARY JUDGMENT**

At the time of the alleged incident giving rise to the Complaint, Kevin Brathwaite ("Plaintiff") was incarcerated and under the supervision of the Department of Correction and housed at the Delaware Correctional Center ("DCC") Smyrna, Delaware. The plaintiff filed a Complaint pursuant to 42 U.S.C. §1983 on or about December 23, 2004, alleging Eighth Amendment violations against numerous DOC and Medical personnel. (D.I.2). On or about March 21, 2005, the plaintiff filed a First Amended Complaint against several more DOC personnel including the defendant and medical personnel alleging further violations of his constitutional rights pursuant to 42 U.S.C. §1983. (D.I.9).On or about March 29, 2006, the court issued a Memorandum Opinion dismissing with prejudice plaintiff's claims against several DOC personnel including defendant Dunn. (D.I.63). In the same opinion and order, plaintiff was permitted to amend the complaint as directed in the court's Memorandum. *Id.* On or about May 1, 2006, the plaintiff filed an Amended Complaint alleging Eighth Amendment violations of cruel and unusual punishment against defendant Dunn. (D.I.74). Specifically, the plaintiff alleges that defendant Dunn assaulted him with capstun, a dangerous weapon.

### Statement of Facts

Plaintiff alleges that "on December 15, 2004, while being housed in the infirmary at the DCC, C/O V. Dunn came to my cell and sprayed me in my face with mace while I laid on my mattress sound asleep. C/O V. Dunn violated this plaintiff's constitutional right to be free from cruel and unusual punishment by assaulting him with a dangerous weapon." (Amended Complaint, *passim*). The actions by defendant Dunn in this case fail to violate the standards promulgated for cruel and unusual punishment and for the use of excessive force. In fact, plaintiff's characterization of this alleged incident as regards to defendant Dunn is entirely inaccurate. (*See* Affidavits of Violet Dunn and Joe Richardson attached at Exhibits A and B).

Shortly before defendant Dunn's shift in the DCC infirmary ended at midnight on December 15, 2004, she and her partner Sgt. Barry Burman ("Burman") handed the keys and equipment: handcuffs, shackles and log books to C/O Ernest Ebwelle ("Ebwelle") who relieved them. *Id.* Aside from a routine shakedown, nothing unusual occurred during the four to midnight shift which required additional briefing by defendant and Burman. The defendant and Burman departed around midnight without incident leaving via the emergency door as was their usual practice. A few minutes after their departure, Ebwelle heard an inmate, later identified as Gerron Lindsey, ("Lindsey") calling for assistance. (See Incident Report attached at Exh.C-1). The plaintiff yelled to Lindsey that he had been capstunned and to call for help. *Id.* Simultaneously, the odor of capstun began to permeate the infirmary area. *Id.* Shortly thereafter, assistance arrived and the plaintiff was medically treated. *Id.*

Plaintiff's allegations that defendant Dunn sprayed him with mace on the morning of December 16, 2004, contravenes the evidence before this court. First, defendant Dunn was never

in possession of capstun as at the time of the alleged incident correctional officers on infirmary duty were not permitted or authorized to carry capstun. (Exh. A-1, ¶4). Second, as previously stated, defendant Dunn and Burman had already returned their keys and equipment to Ebwelle the officer who relieved them. (Exh. A-2, at ¶4). Once the handover was completed defendant Dunn and Burman no longer had access to the cells or to the cell door flap which required keys to open. *Id.* Defendant Dunn therefore, could not have lowered plaintiff's cell door flap to spray him as alleged since she no longer had access to the cells and moreover had departed the building.

Furthermore, while the evidence demonstrates there was a capstun incident on the morning of December 16, 2004, defendant Dunn asserts plaintiff himself has had a difficult time identifying who, or if anyone sprayed him. (*See* Amended Complaint). According to the Incident Reports the plaintiff himself admitted that he was sleeping and therefore was unable to identify the person who sprayed him. (*See* Incident Report attached at Exh. C-2). Plaintiff's grievance filed on December 19th three days after the alleged spraying reflects the same sentiments; "…..I was asleep in my bed and some officers opened up the flap on my door and sprayed me in my face with mace." (*See* Grievance attached at Exh. C-5). Moreover, in the subsequent investigation carried out by DCC's Institutional Investigator Joe Richardson, ("Richardson") the plaintiff claimed that ""unknown correctional officers" lowered the flap in [my] cell door and sprayed pepper spray through the opening." (Exh. B-1, ¶3). Plaintiff concedes by his own words that he has no idea who sprayed him at the time of the incident, but somehow five months later in his Amended Complaint he has determined without any substantive support that it was defendant Dunn.

Later in the morning of December 16th, Richardson commenced an investigation of the alleged incident and interviewed the plaintiff, defendant, Ebwelle, Lindsey and medical personnel Jamillah McKensie. A thorough examination of plaintiff's cell was also performed. (Exh.B-2.at ¶4). During the cell search Richardson noted heavy concentrations of capstun blotted on certain areas of the walls and mattress but little or no evidence in areas that according to plaintiff's statements should have reflected some residue. (*Id*). Specifically, plaintiff's blanket which the plaintiff claimed was covering him while he was sleeping had no substance consistent with that of other surfaces that had been sprayed with capstun. (*Id.*). Plaintiff's mattress was entirely covered with capstun according to the investigation's report. (*Id*). In fact, plaintiff in his amended complaint described his mattress as "saturated." (Amended Complaint). Taking into account plaintiff's description and Richardson's findings regarding the condition of his mattress it appears highly improbable if not unlikely that plaintiff was "sound asleep" on the mattress at the time of the alleged incident. In fact, after collecting and disseminating all of the evidence, Richardson concluded that plaintiff sprayed his own cell. (Exh.B-2 at ¶5). Richardson's conclusion was affirmed three weeks later on January 9, 2005, when Lindsey who initially corroborated plaintiff's story, retracted his account of events and admitted that plaintiff had sprayed his cell. (Exh.B-3 at ¶6).

### I.    Standard for Summary Judgment

The Court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

doubt as to some material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present more than "a mere scintilla of evidence" in its favor and cannot just rely on factually unsupported assertions set forth in its pleadings. *Liberty Lobby*, 477 U.S. at 325; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rather, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial."* Fed. R. Civ. Proc. 56(e). There is no "genuine issue for trial" if the record, taken in its entirety, could not lead a rational trier of fact to find in favor of the nonmoving party. *Id.* at 587. If the factual context of a case makes the nonmoving party's claims implausible, the nonmoving party is required to present "more persuasive evidence to support [its] claim than would otherwise be necessary." *Matsushita*, 475 U.S. at 587.

While the court must draw all justifiable inferences in favor of the nonmoving party, those inferences must be reasonable. "[T]he court is not required to turn a blind eye to contradictions in a party's submissions to the court." *Howell v. Sam's Club*, 959 F. Supp. 260, 264 n.7 (E.D. Pa. 1997). Generally, the court should not assess credibility on summary judgment. "However, when evidence is so contradictory and fanciful that it cannot be believed be a reasonable person, it may be disregarded." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 476 (S.D.N.Y. 2003). When the allegations rise to the level of the irrational or wholly incredible, the court can "pierce the veil of the complaint's factual allegations" to weigh their credibility. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

> II.  **Assuming *arguendo* that a physical confrontation took place, Defendant Dunn's actions did not constitute the use of force in violation of Plaintiff's Eighth Amendment Rights.**

Whether incidents alleging excessive force are constitutionally actionable "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously

and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations omitted). *See also Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Supreme Court has proscribed recovery based on *de minimis* force, unless that force is "repugnant to the conscience of mankind." *Id.* at 9-10.

The Third Circuit has enumerated several factors to consider in determining whether excessive force has been applied in a § 1983 action: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. *See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (applying *Hudson v. McMillian*, *supra*).

The "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley,* 475 U.S at 312, 319. What is required to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." *Hudson,* 503 U.S. at 1, 5. In the case at bar, plaintiff is attempting to allege that he was the recipient of "unnecessary and wanton infliction of pain" at the hands of defendant Dunn. in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

Defendant Dunn denies any such confrontation occurred between her and the plaintiff that caused "unnecessary and wanton infliction of pain." As previously stated, defendant Dunn was never in possession of capstun. (Exh.A-1,¶4) Moreover, the defendant had relinquished her keys and equipment to Ebwelle *before* the alleged incident and thus, was denied further access to plaintiff's cell and/or his cell door flap. (Exh.A-2, ¶4) Lastly, Lindsey's first account of events

can be dismissed as a co-conspirator's collaboration because three weeks later he had a change of heart and refuted his original statement. (Exh. B-3, ¶6).

Assuming *arguendo* that some type of confrontation took place, defendant Dunn respectfully submits that it failed to reach the level of a Constitutional violation under the existing judicially established guidelines. In fact, plaintiff's allegations of a confrontation with defendant Dunn are based solely on his own uncorroborated statements that fly in the face of the evidence before this court. More specifically, reference is made to the Incident Reports submitted by several fellow correctional officers who responded to Ebwelle's call for assistance at the time of the alleged "confrontation." (Exh. C1-C4). On the whole, the reports are consistent as to what transpired and, more importantly as to plaintiff's bald allegations against defendant Dunn, which did not occur. In fact, an Incident Report was not filed by defendant Dunn as her shift was over resulting in her departure from the building. As more fully set forth above in the statement of facts, defendant respectfully submits that the record is devoid of any credible evidence establishing a Constitutional violation of plaintiff's Eighth Amendment rights by defendant Dunn. In fact, the record as established conclusively shows that plaintiff's allegations are wholly without merit and warrant no consideration by this Honorable Court. Accordingly, defendant Dunn is entitled to summary judgment as a matter of law and respectfully requests that this Honorable Court grant said motion.

### III.     DEFENDANT DUNN IS ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects officials from the personal cost of litigation and the attendant

inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988).

The Supreme Court has announced unequivocally that the District Court, at the earliest possible stage of litigation, must consider the defense of qualified immunity under a legal standard separate and apart from its analysis of the underlying claim itself. These two analyses are not susceptible to fusion, and cannot be left for factual resolution by the trier of fact. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first question before the Court in a qualified immunity analysis is whether, taken in the light most favorable to the party asserting injury, the facts show that the prison officials' conduct violated a constitutional right. *Brosseau v. Haugen,* 125 S.Ct. 596, 598 (2004)(*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For the reasons set forth above, plaintiff has failed to provide any evidentiary support to his alleged constitutional violation. Additionally, plaintiff's claim of cruel and unusual punishment also suffers from legal defects as he has failed to make out a constitutional violation.

The next stage of the qualified immunity analysis requires the Court to ask whether the constitutional right allegedly violated was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable prison official that his conduct was unlawful in the situation he confronted." *Id* at 202. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must ask whether a reasonable public official would know his or her specific conduct violated clearly established rights. *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). "The 'salient question' is whether the state of the law at the time of the

challenged conduct gave defendants 'fair warning' that their action was unconstitutional. *Black Hawk v. Pennsylvania*, 225 F.Supp.2d 465, 480 (M.D. Pa. 2002)(*quoting Hope v. Pelzer*, 536 U.S. 730,741 (2002)(articulating the "clearly established" inquiry to require that an official have 'fair warning' that the alleged activity engaged in was unconstitutional)).

Nothing in plaintiff's Amended Complaint or records supports a finding that defendant Dunn ever engaged in any conduct which violated plaintiff's rights. Additionally, plaintiff's vague statements in his Amended Complaint fail to allege how defendant Dunn's specific conduct violated his clearly established rights. Accordingly, defendant Dunn is entitled to the defense of qualified immunity and summary judgment in her favor.

## IV. THE ELEVENTH AMENDMENT IMMUNIZES DEFENDANT DUNN FROM SUIT IN HER OFFICIAL CAPACITY

The plaintiff's Complaint arguably names the defendant in her official capacity. The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996). "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a

suit against a state agency is proscribed." *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can abrogate a state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). No such clear intent can be seen in 42 *U.S.C.* §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C.* §1983. Neither the State of Delaware, nor agencies or officials of the State of Delaware are "persons" as contemplated by 42 *U.S.C.* § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the defendant in her official capacity is not a "person" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks jurisdiction over the defendant in her official capacity, and defendant is outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Accordingly, any "official capacity" claims against the defendant should be dismissed based on the Eleventh Amendment to the United States Constitution.

### V. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Though *pro se* pleadings are entitled to leniency, such pleadings must still place a defendant on notice as to what wrong he has supposedly committed. *Riley v. Jeffes*, 777 F.2d 143, 148 (3d Cir. 1985) ("[I]f a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed."). *See also Solis v. Breslin*, 107 Fed.Appx. 262, 264 (2d Cir.

2004)(quoting *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514 (2002)(affirming the District Court's dismissal of a *pro se* inmate's complaint because he had "not alleged the occurrence of any specific acts" which gave the defendants "fair notice" of what his claim was and "the grounds upon which they rest."). "Plaintiffs suing governmental officials in their individual capacities, . . . must allege specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Id.* Although facts must be read in a light favorable to the non-moving party when considering a motion to dismiss or for summary judgment, there is no requirement to accept as true factual allegations that are vague and amorphous and thus cannot be proved. Plaintiff's Amended Complaint provides no evidence to support his claim of Eighth Amendment violations; therefore, defendant Dunn is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendant Dunn respectfully requests that this Honorable Court enter an order dismissing plaintiff's claims against her with prejudice.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, ID#3879
Deputy Attorney General
Department of Justice
820 N. French Street,
Carvel State Bldg., 6th floor
Wilmington, DE 19801
302-577-8400

Dated:   October 30, 2006

*CERTIFICATE OF SERVICE AND MAILING*

I hereby certify that on October 30, 2006, I electronically filed *State Defendant's Violet Dunn's Opening Memorandum of Points and Authorities in Support of Her Motion to Dismiss/Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on October 30, 2006, I have mailed by United States Postal Service, the document to the following non-registered participant: Kevin C. Brathwaite; SBI #315294; Delaware Correctional Center; 1181 Paddock Road; Smyrna, DE 19977.

.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
ophelia.waters@state.de.us