IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Kevin Brathwaite, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1542-GMS |
| | ) | |
| Thomas Carroll, Warden, et al., | ) | Trial by Jury Demanded |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF JOE RICHARDSON

Joe Richardson, having been duly sworn according to law, deposes and states as follows:

1. I am employed by the State of Delaware, Department of Correction ("DOC") at the Delaware Correctional Center ("DCC") Smyrna, Delaware as an Institutional Investigator. I have held this position since February, 2001. Among my responsibilities are investigating allegations of criminal offenses and misconduct in addition to monitoring gang activity.

2. I make this affidavit based upon my personal knowledge.

3. On December 16, 2004, at 9:45 AM I interviewed the plaintiff regarding an incident which occurred in the DCC infirmary in the early morning hours of December 16, 2004. The plaintiff alleged that he was "dead asleep" covered with a blanket on a mattress on the floor when he felt some wet stuff on his face. Subsequently, plaintiff's face started to burn. The plaintiff alleged that "unknown correctional officers" lowered the flap in his cell door and sprayed pepper spray through the opening. The plaintiff stated that he recognized the substance sprayed in his room as pepper spray as he had been sprayed on a prior occasion The plaintiff stated that he never heard his

B-1

cell door flap open but heard it close.

4. During the investigation I examined plaintiff's cell. On the left wall of the cell there was a large stain which appeared to have been applied at fairly close range. If the wall had been sprayed from a greater distance the substance would have dissipated instead of reflecting a concentrated application. Additionally, the distance from the open flap, the alleged entry point to the wall was measured at 67 inches or 5 feet and 7 inches. At that distance, it is unlikely that a heavy concentration of spray could form. Also noted was a complete lack of residue of any type on the inner flap of the door.

5. The plaintiff alleges that he was sound asleep on his mattress utilizing a sole blanket for warmth in a room which the plaintiff described as very cold. The plaintiff also admitted blocking the air vents due to the cold. The plaintiff's blanket which he claims was covering him had no substance consistent with that of other surfaces that had been sprayed with capstun. Also, the quantity and area of the substance on the mattress indicated the substance was sprayed from inside the room as there was no impairment of the substance reaching the mattress. The entire mattress had been sprayed. Furthermore, the concentration of the substance on the mattress particularly where plaintiff's head would have lain should have had corresponding stains and residue on the floor; however, there were none. Based on my examination of the plaintiff's cell and my interview with him, I concluded that the plaintiff himself sprayed his cell.

6. On this very same date, December 16, 2004, I also interviewed Gerron Lindsey ("Lindsey") an inmate who was in the cell next to the plaintiff's at the time of the incident. Lindsey claimed there was a capstun incident right around shift change in the early morning hours of December 16, 2004. Lindsey further alleged that he was

asleep in bed when he heard the plaintiff "hollering and cussing." Lindsey also claimed that he heard the plaintiff's cell door flap slam. The plaintiff yelled to Lindsey to call the nurse because he had been sprayed with capstun. A few minutes later, C/O Ebwelle arrived and transferred plaintiff to be medically treated. Three weeks later, on January 9, 2005, Lindsey retracted his account of events and admitted that the plaintiff had sprayed himself which corroborates the evidence found during my investigation.

_____
Joe Richardson

SWORN TO AND SUBSCRIBED before me this 11 day of SepT, 2006.

_____
Notary

B-3