IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN BRAITHWAITE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | C.A. No. 04-1542-GMS |
| MARCELLO RISPOLI et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THE STATE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

1.   Plaintiff Kevin Braithwaite, ("Braithwaite") is a sentenced inmate incarcerated and under the supervision of the Delaware Department of Correction ("DOC") at the Delaware Correctional Center, ("DCC") Smyrna, Delaware.  On or about December 22, 2004, Braithwaite filed a Complaint pursuant to 42 U.S.C.§1983 with leave to proceed *in forma pauperis* alleging Eighth and Fourteenth Amendment violations against numerous DCC and Medical personnel. (D.I. 2).  The procedural history of this case is rather long therefore, for the purposes of this motion only relevant portions of the record  will be referred to for the court's consideration. Following briefing by the parties, the court's Memorandum Opinion of March 29, 2006, dismissed with prejudice claims against State Defendants Thomas Carroll, Betty Burris, David Pierce Charles Cunningham, Lt. Godwin, Sgt. Lovett, Violet Dunn and Don Overmeyer. (D.I. 28, 29). Braithwaite was permitted to amend his complaint as directed in the court's Memorandum. *Id.*

2.   On or about March 30, 2006, Braithwaite filed a motion with the court voluntarily dismissing Medical Defendants: Dr. Raman, Nurses Harris, Whittle and Kera and First

Correctional Medical ("FCM") as well as State Defendants William Yoder, David Phillips and Sgt. Lovett. (D.I. 65). On or about April 3, 2006, the court granted Braithwaite's motion dismissing without prejudice the above mentioned Defendants. (D.I. __). On or about Braithwaite amended his Complaint alleging Eighth and Fourteenth Amendment violations against State Defendant Violet Dunn. (D.I. 74).

3. On or about July 17, 2006, in the court's Memorandum Opinion, State Defendants Dave Holman, Anthony Rendina, Cathy Malay, Larry Savage, and Lise Merson were dismissed with prejudice. (D.I. 77). Additionally, Braithwaite's 42 U.S.C. §1985(2) conspiracy claim against State Defendants Edwin Nkwopara, Matt Stevenson, Barbi Thomas, and Robert Wallace was dismissed with prejudice. *Id.* Presently, Eighth Amendment claims against Defendants Stephanie Carpenter, Robert Wallace, Matt Stevenson, Marcello Rispoli and Violet Dunn remain.

4. Federal Rule of Civil Procedure 56(c) provides that a party is entitled to a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When considering a Motion for Summary Judgment, the court must view the evidence in the light most favorable to the nonmoving party. *O'Donnell v. United States*, 891 F.2d 1079, 1082 (3d Cir. 1989). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any..." which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 323-25 (1986). Once the movant satisfies this burden, the non-moving party must demonstrate to the court that sufficient evidence exists from which a jury might return a verdict

in its favor. *Id.* The mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). For the reasons stated herein, Defendants Wallace, Stevenson, Carpenter, Rispoli and Dunn are entitled to judgment as a matter of law as Braithwaite cannot present evidence which demonstrates any disputed genuine issue as to any material fact.

### **WALLACE AND STEVENSON – EXCESSIVE FORCE**

5. On October 9, 2004, around 9:00 AM, Defendant Robert Wallace and C/O Edwin Nkowpara were conducting a strip search on Braithwaite in his cell. (Exh. A-1, A-5). Braithwaite complied with orders to remove his pants and shirt but when he got down to his underwear a razor fell out of what appeared to be a pocket in the front of Braithwaite's underwear. *Id.* Braithwaite was then ordered to remove his underwear but he refused. *Id.* Braithwaite was ordered once again by Wallace to remove his underwear but he still refused. *Id.* Braithwaite was then ordered to get dressed as he was going to be removed from his cell for refusing to comply with orders and taken to an area Lieutenant. (A-2,¶2). Without warning, Braithwaite suddenly charged toward the cell door, with his right hand clinched in a fist raised in the air. *Id.* Braithwaite was able to lodge his arm between the door frame and the cell door which prevented the officers from closing his cell door. *Id.* While attempting to push Braithwaite's arm back into the cell he threw another clinched fist punch at Wallace. *Id.* Wallace then sprayed Braithwaite with capstun, which permitted him and Nkowpara time to subdue Braithwaite while waiting for back up assistance. (A-2,¶4).

Shortly thereafter, back up assistance arrived, and Officers Stevenson and Phillips were informed of what had transpired. Braithwaite was then ordered by Phillips to come forward to be handcuffed to be removed from his cell. (A-2,¶4) Braithwaite refused at first, but then told the officers that he would no longer be a problem and would exit his cell. *Id.* As Phillips started to place handcuffs on Braithwaite however, he attempted to strike Phillips with a clenched fist. (B-2,¶4). At that point, all four officers took Braithwaite to the ground with Wallace and Phillips securing Braithwaite's upper body while Nkwopara and Stevenson secured the lower half .*Id.* Medical was contacted; Nurse Kera arrived and examined Braithwaite applying milk to his face to alleviate the effects of the capstun. (Exh. C-1). Braithwaite was subsequently cleared by medical, handcuffed, shackled and taken to Building #20 (isolation) under escort by all four officers.

### **CARPENTER – EXCESSIVE FORCE**

6.    Later, that same day, on the 4:00 PM to Midnight shift Braithwaite was involved in a second incident[1] with Defendant Stephanie Carpenter. At approximately 10:00 PM, Carpenter was informed by tier officers that Braithwaite had tied a bed sheet to his ceiling light and was proceeding to put the other end around his neck in an attempt to commit suicide. (Exh. E-1, E-3). Carpenter responded immediately to Braithwaite's cell ordering control to open his door. *Id.* No sooner had the door opened Braithwaite lunged at Carpenter resulting in Carpenter spraying Braithwaite with capstun. *Id.* Contrary to Braithwaite's allegations, Carpenter had every intention of assisting him but was unable to do so because of his threatening behavior. No one, much less a trained officer, would react in such a manner as she did to someone who is attempting suicide if she didn't feel threatened with physical injury or worse. As it turned out,

---

[1] Actually, there were three incidents involving Braithwaite on October 9, 2004. See Incident Report #1016344 and Disciplinary Report #1013445 at Exhibit D-1, D-2.

Braithwaite "faked" his suicide in an attempt to be transferred from isolation to the infirmary[2] where he was placed subsequent to the incident earlier that morning. Braithwaite was examined again by medical and returned to his cell. (Exh. F-1, F-2 )

7. The Third Circuit has enumerated several factors to consider in determining whether excessive force has been applied in a § 1983 action:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. *See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (applying *Hudson v. McMillian*, *supra*).

Where prison officials use force to address a prison disturbance, the question of whether the force used inflicted unnecessary and wanton pain turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-321. Not every "malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson,* 503 U.S. at 9. The Eighth Amendment prohibition against cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley,* 475 U.S. at 327. The actions taken by Wallace, Stevenson and Carpenter on October 9, 2004 are an example of the type of force envisioned by the Supreme Court as *de minimis*.

---

[2]  Braithwaite's Deposition, Pg. 33, Ln 14- 18.
A. "She (Nurse Holly)  said I would be going to the infirmary. That's all I wanted – was to go to the infirmary to get treatment – because they – the whole thing was put me back in the hole until I heal up. That was the whole thing. That's what they wanted to do."

The use of *de minimis* force does not constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Whitley*, 475 U.S. at 327. "There exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." *Reyes v. Chinnici*, 54 Fed. Appx. 44, 48 (3d Cir. 2002).

      8.     This Court has previously addressed inmate excessive force claims in the context of the use of cap-stun or mace. In *Wright v. Snyder*, 2002 WL 1821583, at *1 (D. Del. July 8, 2002) (attached hereto as Exhibit G-1, G-5), defendant correctional officers were conducting strip searches of inmates for drugs, weapons and contraband. Plaintiff claimed that he complied with directions but made a sarcastic comment to defendants. Defendants claimed that plaintiff stated that he would not comply and moved towards them in a threatening manner, at which time he was sprayed once with cap-stun. Shortly thereafter, plaintiff was treated by a nurse. The medical notes indicated that "no other trauma was seen . . . denies other injuries." *Id.*

The court found that plaintiff's actions demonstrated that he did not obey defendants' orders to permit a body cavity search for contraband. *Id.* at *3. Defendants' claim that plaintiff lunged towards them stated a reasonably perceived threat justifying use of force. The amount of force used, pepper spray, was reasonably related to the need for force because defendants believed that plaintiff was moving in a threatening manner, and the purpose of the pepper spray was to subdue unruly subjects. The court granted defendants' motion for summary judgment. *Id.* at *4.

"[O]fficers confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators and visitors against the harm inmates may suffer if guards use force." *Hudson,* 503 U.S. at 6. While weighing these competing concerns, officials

must make decisions as to the use of force "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley,* 475 U.S. at 320. When using the Third Circuit's criteria to evaluate the use of force in this case, the events of October 9, 2004, do not add up to excessive force. In the earlier incident, involving Wallace and Stevenson, Braithwaite was ordered two times to comply with the strip search but refused to do so. This is evidence that Wallace was trying in good faith to maintain discipline, and not to maliciously cause harm. The force used was needed when Braithwaite suddenly charged the officers with a clenched fist and then attempted to prevent the officers from closing his cell door.

     Furthermore, the officers' actions comply with DOC standard procedures regarding offender assailants. (Exh.H-1,H-2) DOC personnel are trained in a variety of physical control techniques and instruments for use in defense of themselves and others and are given instruction on the appropriate application of each. *Id.* Conditions under which force is used is based on a realistic evaluation of the actual need for that application on a case by case basis. The officers' perception of the threat presented is critical to the evaluation of the use of force. *Id.* According to the DOC's "use of force" model, offenders' behavior fall into three distinct categories; cooperative, resister and assailant. *Id.* Offender actions that are aggressively offensive and threatening without the use of weapons can be met by physical force with control instruments or impact weapons. (H-2, ¶4). The facts reflect that Braithwaite's behavior falls into the category of offender assailant for both October 9th incidents where capstun was rightfully applied by the officers.

     9.    Contrary to Braithwaite's allegations that he was "kicked, punched, and stomped on" by Wallace and Stevenson, there is no mention of any injuries sustained by Braithwaite in the medical notes following the October 9th, 9:00 AM incident except for "minimal left elbow

pain. Has full range of motion." (Exh. C-1). Following the second incident later that evening at 10:00 PM, Braithwaite was transferred to the Interview Room where Nurse Holly examined him. (Exh. F-1, F-2 ). According to her medical notes, Braithwaite had bruising, a small hematoma on right lower lip consistent with bite trauma and soreness in some on the shoulders. *Id.* Nurse Holly also found the "inmate in no acute distress (NAD) and noted that inmate appears to be exaggerating symptoms."  *Id.* She also wrote that "the inmate advised he had court on Wednesday and is testifying against DOC staff, and thus fears reprisal for his safety. He requests to be moved to the infirmary." *Id.* It appears from Nurse Holly's notes that Braithwaite's desire to be transferred to the infirmary was based more on his alleged fear of retaliation from officers regarding his pending court appearance, rather than to injuries allegedly suffered at the hands Wallace, Stevenson and Carpenter. At the end of Nurse Holly's report, she adds "Wishes to go to infirmary, not nec.(necessary) medically, but can bring up safety issue with DOC." (F-1). It is clear from Nurse Holly's notes that in her opinion, Braithwaite did not need to go to the infirmary.

In another medical assessment filed by Nurse Holwerda two hours later at 12:10 AM, she notes that Braithwaite's chief complaint was rib pain. (Exh.I-1).  Also noted were bruises on Braithwaite's back, no open wounds and no deformities.  While the medical records reflect that Braithwaite had bruises and some tenderness in the shoulder and back areas, there is nothing to indicate that Braithwaite suffered a "dislocated shoulder," "cracked ribs" or "loose teeth" as he alleges in his complaint. In fact, the injuries that Braithwaite suffered are consistent with the actions of four officers having to take him down in order to subdue him because of his refusal to obey orders. The use of force by Wallace, Stevenson and Carpenter was *de mimimis* and

justifiable as Braithwaite not only physically threatened them but interfered with their duties and responsibilities of maintaining a safe and secure environment.

### MARCELLO RISPOLI – PUNITIVE DAMAGES

10.     Braithwaite alleges that on October 22, 2004, at approximately 11:40 PM. while being housed in the infirmary on suicide watch, Rispoli and three other officers whom he could not identify, assaulted him in his cell. (Complaint, *passim*). For relief, Braithwaite requested compensatory and punitive damages. *Id.* The Court's Memorandum Opinion dated July 17, 2006, (D.I. 77), concluded that Braithwaite could not receive compensatory damages as he alleged no injury as a result of the alleged assault. 42 U.S.C. §1997(e). Although Braithwaite was granted leave to amend his complaint, there is no evidence that he did so. The Court, however, did let stand Braithwaite's claim for punitive damages.

Punitive damages may be awarded based solely on a constitutional violation, provided the proper showing is made. *Allah v. Al-Hafeez,* 226 F.3d 247 (3d Cir. 2000). Punitive damages may be awarded under 42 U.S.C. §1983 "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id.* at 252. (quoting, *Smith v. Wade,* 461 U.S. 30, 56 (1983)). "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Id.*(quoting, *Memphis Community Sch. Dist. V. Stachura,* 477 U.S. 299, (1986).

Rispoli contends that he couldn't have assaulted Braithwaite on October 22, 2004, as he was not on duty in the infirmary on that date. (See Exh. J-1, J-2) The logbook entries for that date and shift show that two other Officers: Violet Dunn and Don Overmeyer were on duty.

(Exh. K-1, K-2). Moreover, the logbook entries for the date and shift in question do not indicate that any type of disturbance occurred in the infirmary.

In this case, Rispoli cannot be punished for his "willful or malicious conduct" as he was not present during the time that Braithwaite alleges that an assault occurred. Braithwaite only asserts bald allegations against Rispoli for which there is no evidence of support.

### **VIOLET DUNN – EXCESSIVE FORCE**

11.    In the Court's Memorandum of March 29, 2006, the Court permitted Braithwaite to amend his complaint. On or about May 6, 2006, Braithwaite filed an amended complaint alleging Eighth and Fourteenth Amendment violations against Dunn. (D.I. 74). Specifically, Braithwaite alleges that Dunn assaulted him with capstun, a dangerous weapon on or about December 15, 2004. *Id.*   On or about October 30, 2006, Dunn filed a Motion to Dismiss with an Opening Brief in Support thereof. (D.I. 84, 85). Braithwaite filed an Answering Brief on or about November 13, 2006. (D.I. 86) with Dunn filing a Reply Brief on November 20, 2006. (D.I. 87).

To avoid unnecessary duplication and for the sake of judicial economy, Dunn directs this Honorable Court's attention to the Briefs filed for which said motions remain pending.

12.    Generally, government officials are protected from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is designed to protect officials from the personal cost of litigation and the attendant inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988) (*citing Anderson v. Creighton,* 483 U.S. 635 (1987)).

As the Third Circuit Court of Appeals held in *Ryan v. Burlington County*, 889 F.2d 1286, 1292 (3d Cir. 1989) "[t]he defense of qualified immunity is a recognition of the fact that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions and, quite possibly, deters qualified people from accepting public service." *Id.* Instantly, even if the defendants are found to have violated the prisoner's constitutional rights, defendants are immune from personal liability because reasonably well-trained officers would not know that they were required to take more personal responsibility than that which the defendants assumed. Accordingly, as Braithwaite fails to defeat the affirmative defense of qualified immunity, dismissal is appropriate.

13.   Defendants are also immune from liability under the Eleventh Amendment. The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. Id. No such clear intent can be seen in 42 U.S.C. §1983. In fact, Congress' intent appears to be to the contrary as the statute facially allows suits only to be brought against "persons." 42 U.S.C. §1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo,* 502 U.S. 21 (1991). Under federal law, the defendants in their official capacities are not "persons" for the purposes of 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks jurisdiction

over the defendants in their official capacities, and the defendants are outside the class of persons subject to liability under 42 U.S.C. § 1983. Therefore, dismissal is appropriate.

WHEREFORE, based upon the foregoing arguments, Defendants respectfully request this Honorable Court enter an Order dismissing Braithwaite's complaint pursuant to Fed. R. Civ. P. 56(c). For the reasons stated herein, the Defendants are entitled to judgment as a matter of law as to each of Braithwaite's claims as there is no evidence presented which demonstrates any disputed genuine issue as to any material fact.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, ID# 3879
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
ophelia.waters@state.de.us

Attorney for State Defendants

Dated: June 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2007, I electronically filed *Defendants Robert Wallace, Matt Stevenson, Stephanie Carpenter, Marcello Rispoli and Violet Dunn's Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment.* I hereby certify that on June 1, 2007, I have mailed by United States Postal Service, the document to the following non-registered party:

Kevin C. Brathwaite, Inmate
SBI #315294
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, ID# 3879
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
ophelia.waters@state.de.us