IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1542 GMS |
| | ) |
| LT. MARCELLO RISPOLI, SGT. ROBERT WALLACE, SGT. MATT STEVENSON, SGT. STEPHANIE CARPENTER, and C/O V. DUNN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Kevin Brathwaite ("Brathwaite"), a prisoner incarcerated at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Brathwaite alleges that Lt. Marcello Rispoli ("Rispoli"), Sgt. Robert Wallace ("Wallace"), Sgt. Matt Stevenson ("Stevenson"), Sgt. Stephanie Carpenter ("Carpenter"), and C/O V. Dunn ("Dunn") violated his Eighth Amendment rights. (D.I. 2.) On March 21, 2005, prior to serving any of the defendants, Brathwaite filed an amended complaint naming additional defendants and alleging further violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (D.I. 9.) Brathwaite filed another amended complaint on May 1, 2006, containing specific excessive force allegations against Dunn. (D.I. 74.)

On March 29, 2006, the court issued a Memorandum and Order dismissing Brathwaite's claims with prejudice against the defendants Thomas Carroll, Betty Burris, David Pierce, Charles

Cunningham, Lieutenant Godwin, V. Dunn, and Don Overmeyer. (D.I. 63.) Dunn was added back as a defendant pursuant to an amendment to the complaint permitted by the March 29, 2006 order. On April 3, 2006, the court granted Brathwaite's motion to voluntarily dismiss defendants Bob Harris, Dr. Raman, Nurse Kera, William Yoder, David Phillips, Sergeant Lovett, Amy Whittle, and First Correctional Medical. (D.I. 65.) In a second Memorandum and Order dated July 17, 2006, the court dismissed with prejudice the claims against Major David K. Holman, Anthony J. Rendina, Cathy Malay, Lt. Larry Savage, Sgt. Barbi Thomas, C/O Edwin Nkowpara, and C/O Lise Merson. (D.I. 77.) The defendants remaining are Rispoli, Wallace, Stevenson, Carpenter, and Dunn.

Now before the court are: (1) Brathwaite's Motion to Appoint Counsel and Motion to Expedite (D.I. 81, 83); (2) State Defendant Dunn's Motion to Dismiss/Summary Judgment and Motion to Strike Reply Brief (D.I. 84, 89); and (3) two Motions for Protective Order filed by the State defendants Carpenter, Dunn, Rispoli, Stevenson, and Wallace (D.I. 92, 94). For the reasons that follow, the court will deny Brathwaite's Motion to Appoint Counsel (D.I. 81) and deny without prejudice the Motion to Expedite (D.I. 81). The court will grant Dunn's Motion to Dismiss/Summary Judgment (D.I. 84) and will deny Dunn's Motion to Strike Reply Brief (D.I. 89). The court will grant the Motions for Protective Order (D.I. 92, 94).

## II. BACKGROUND

The allegations of the remaining claims are that, on October 9, 2004, at approximately 9:00 a.m., Carpenter, Stevenson, and Wallace physically assaulted Brathwaite with a dangerous weapon, and with their hands and feet. (D.I. 2 Statement of Claims, at 1.) Brathwaite next alleges that on October 22, 2004, Rispoli and several other officers assaulted him. *Id.*

Brathwaite alleges a third assault occurred in the infirmary on December 15, 2004, while he was laying down and sleeping on the floor of his cell, and he was assaulted with a dangerous weapon by three correctional officers, including Dunn. (D.I. 9 Factual Allegations, at 16; D.I. 74 Statement of Claim.) More specifically, Brathwaite alleges that, while he was sleeping on his mattress, Dunn "came to [his] cell and sprayed [him] in the face with pepper spray[1]." (D.I. 74 Affidavit.) Brathwaite alleges he was removed from his cell and escorted to the shower to wash the pepper spray from his face and body. *Id.* He was told he could not return to his cell because it was saturated with pepper spray and was taken to a different cell. *Id.*

Dunn, a correctional officer during the relevant time period, states that on December 15, 2004, she and Sgt. Barry Burman ("Burman") worked the four to midnight shift in the DCC infirmary. (D.I. 85, Dunn Aff. ¶ 3.) Shortly before the shift ended, C/O Ernest Ebwelle ("Ebwelle") arrived to relieve Dunn. *Id.* Burman and Dunn gave Ebwelle the keys and equipment and briefed him on the events of the shift. *Id.* Once the keys were given to Ebwelle, Dunn no longer had access to any of the cells or door flaps as the cell door flaps can only be opened with keys. *Id.* at ¶ 4. Dunn did not have pepper spray in her possession at any time during her shift because correctional officers are not authorized or permitted to carry pepper spray while on infirmary duty. *Id.* at ¶ 4. She states that upon leaving, there was no odor or visible sign that pepper spray had been sprayed at any time. *Id.*

On December 16, 2004, Joe Richardson, an institutional investigator at DCC, conducted an investigation of the December 15, 2004 incident. (D.I. 85, Richardson aff.) Richardson

---

[1]Mace, capstun and pepper spray are used interchangeably by the defendants and the plaintiff throughout the pleadings. For the sake of uniformity, the Memorandum will use the term "pepper spray".

interviewed Brathwaite who told him that while he was "dead asleep" and "covered with a blanket on a mattress on the floor" "unknown correctional officers" lowered the flap in his cell door and sprayed pepper spray through the opening. *Id.* at ¶ 3. Based upon his examination of Brathwaite's cell and the interview of Brathwaite, Richardson concluded that it was Brathwaite who sprayed the cell. *Id.* at ¶ 5. Richardson also interviewed Gerron Lindsey ("Lindsey"), an inmate who was in the cell next to Brathwaite. *Id.* at ¶ 6. Lindsey initially told Richardson he heard Brathwaite hollering and cursing, heard Brathwaite's cell door flap slam, and heard Brathwaite yell to Lindsey to call a nurse because Brathwaite had been sprayed with pepper spray. *Id.* Three weeks later Lindsey changed his statement and indicated that Brathwaite had sprayed himself. *Id.*

An incident report prepared by Ebwelle indicates that he was briefed by Burman and Dunn and then relieved them. (D.I. 85. Ex. C-1.) There was no mention by the previous shift of pepper spray use. *Id.* During the head count, Lindsey called Ebwelle and asked him to check on Brathwaite. *Id.* As he neared Brathwaite's cell door, Ebwelle smelled pepper spray and saw Brathwaite choking, coughing and struggling to wipe his eyes. *Id.* Brathwaite told Ebwelle he did not know who sprayed him because he was asleep. *Id.* at C-2. Ebwelle saw pepper spray residue on the cell wall under the intercom and a large amount of residue on the upper part of the mattress around the area where Brathwaite's head would have been positioned when sleeping. *Id.* at C-1. There was pepper spray on the inside door jam adjacent to the flap. *Id.* at C-2. Also, there was heavy spray on the wall down to and including the mattress. *Id.* In his opposition to Dunn's motion, Brathwaite refers to an unnamed witness who saw Dunn shaking a can of pepper spray prior to the assault. (D.I. 86, ¶ 3.) Brathwaite states that because he is on twenty-four hour

lockdown, he has been unable to obtain the affidavit of the witness. (D.I. 88.)

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 183 (3d Cir. 1993). Thus, the court must accept the factual allegations of the complaint as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988). In performing this task, however, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). On the other hand, a court should dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Graves*, 117 F.3d at 726; *Nami*, 82 F.3d at 65 (both citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Conley*, 355 U.S. at 45-46). Finally, the Third Circuit has held that a district court may not dismiss a complaint with prejudice, and must permit amendment, where a plaintiff can remedy the complaint by an amendment, unless the amendment would be

inequitable, futile, or untimely. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004).

**B. Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV. DISCUSSION

### A. Sovereign Immunity

Dunn moves for dismissal of any claims against her in her official capacity on the basis of Eleventh Amendment immunity. At the time of the occurrence, Dunn was employed by the Delaware Department of Correction ("DOC") as a correctional officer. A suit against a state agency or state official in his or her official capacity is treated as a suit against the state. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). This is so because neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). While a state is normally entitled to sovereign immunity, Congress may abrogate the state's immunity through a valid exercise of its power, or the state itself may waive its immunity. *See Lavia v. Commonwealth of Pennsylvania*, 224 F.3d 190, 195 (3d Cir. 2000).

Neither of the two sovereign immunity exceptions are relevant here. First, the state has not waived its Eleventh Amendment immunity. A waiver will be found only where it has been stated "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Space Age Products, Inc. v. Gilliam*, 488 F.Supp. 775, 780 (D. Del. 1980) (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). Such an express waiver may be made through clear constitutional or statutory language. *See Lavia*, 224 F.3d at 195. Neither the constitution nor any Delaware statute expressly waives Delaware's Eleventh Amendment sovereign immunity. *See Ospina v. Department of Corr.*, 749 F.Supp. 572, 579 (D. Del. 1990). Finally, Congress has not abrogated the states' immunity for claims under § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Since Delaware's immunity has not been waived or abrogated, the court will dismiss Brathwaite's claims against Dunn in her

official capacity.

**B. Excessive Force**

Whenever a plaintiff claims that a prison official used excessive physical force, thus violating the cruel and unusual punishment clause, "the core judicial inquiry is. . .whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Brathwaite does not have to demonstrate serious injury, although the extent of injuries suffered is a factor in determining whether the use of force was necessary or not. *Hudson,* 503 U.S. at 7. *See also Brooks v. Kyler,* 204 F.3d 102, 104 (3d Cir. 2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force). Other factors considered in determining whether the use of force was wanton and unnecessary include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson,* 503 U.S. at 7 (quoting *Whitley, Whitley v. Albers,* 475 U.S. 312, 321 (1986).

In the instant case, Brathwaite alleges that Dunn used excessive force by spraying him with pepper spray while he was sleeping. These allegations, if true, are sufficient to withstand a motion to dismiss because it is alleged that Dunn may have intentionally harmed plaintiff without apparent provocation for the very purpose of causing harm.

Dunn has also moved for summary judgment. It is undisputed that Brathwaite was on the receiving end of a pepper spray attack. Brathwaite, however, has not provided evidence to support his allegations that Dunn was the person responsible for the spraying. Brathwaite admits

that he was asleep at the time of the spraying and did not see who sprayed him. He argues, without any supporting documentation or evidence, that an unknown witness saw Dunn shaking a can of pepper spray prior to the assault. Brathwaite does not say when or where Dunn was when she allegedly shook the can.

Conversely, affidavits and supporting documentation submitted by the defendants indicate that on the night in question Dunn was not allowed or authorized to carry pepper spray due to her assignment to the infirmary. Prior to the end of her shift, she met with Ebwelle who would relieve her, brief him of the night's events, and gave him the keys and equipment. Once Dunn turned over the keys, she no longer had access to any inmate's cell or door since they can only be opened with keys. The record reflects that, it was only after Ebwelle received the keys from Dunn and was conducting headcount and Dunn no longer had access to any cells, did Ebwelle hear inmate Lindsey call for help on behalf of Brathwaite.

After reviewing the record, the court finds that Brathwaite has not demonstrated sufficient evidence to enable a jury to reasonably find for him on the issue of whether Dunn violated his Eighth Amendment rights. Dunn is entitled to judgment as a matter of law, and, therefore, the court will grant her motion for summary judgment.[2] (D.I. 84.)

---

[2]Brathwaite did not provide evidence sufficient to defeat Dunn's motion for summary judgment on the issue of whether she was the corrections officer who sprayed the pepper spray. Accordingly, there is no need to address whether the force used was unnecessary or excessive force. As another ground for summary judgment, Dunn argues that she is entitled to qualified immunity. The court finds no need to address the issue because Dunn will be granted summary judgment on other grounds. It is noted, however, that nothing in the record indicates pepper spray was used on the sleeping Brathwaite to maintain or restore discipline.

## V. OTHER PENDING MOTIONS

### A. Appointment of Counsel

Brathwaite renews his motion for appointed counsel. (D.I. 81.) In support of his motion he states that he is incarcerated, unskilled in civil law, under twenty-four hour lockdown, has limited access to the law library, can every allegation made if given the opportunity to depose witnesses which can only be done with appointed counsel, the case is becoming complex, the case has arguable merit in fact and law, and appointed counsel would serve the best interests of justice.

A plaintiff has no constitutional or statutory right to the appointment of counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153-54 (3d Cir. 1993). Nevertheless, under certain circumstances, the court may in its discretion appoint an attorney to represent an indigent civil litigant. *See* 28 U.S.C. § 1915(e)(1). When evaluating a motion for the appointment of counsel filed by a *pro se* plaintiff, initially, the court must examine the merits of the plaintiff's claim to determine whether it has some arguable merit in fact and law. *See Parham*, 126 F.3d at 457 (citing *Tabron*, 6 F.3d at 157). If the case has arguable merit the court should proceed to consider (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the extensiveness of the factual investigation necessary to effectively litigate the case and the plaintiff's ability to pursue such an investigation; (4) the degree to which the case may turn on credibility determinations; (5) whether the testimony of expert witnesses will be necessary; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See Parham*, 126 F.3d at 457-58 (citing *Tabron*, 6 F.3d at 155-56, 157 n.5). The list of factors is not exhaustive.

The court assumes solely for the purpose of deciding the pending motion, that Brathwaite's claims have arguable merit, and will, therefore, consider the factors articulated in *Parham* and *Tabron*. Brathwaite proceeds *in forma pauperis* and it appears, therefore, he is unable to afford legal representation. Nonetheless, the majority of factors weigh against Brathwaite's need for the appointment of counsel at this stage of the litigation process.

Notwithstanding his lack of formal schooling in the law and limited access to the law library, Brathwaite appears to be sufficiently capable of presenting this case without assistance. For example, in his complaint, Brathwaite has clearly laid out the facts which he believes entitle him to relief. He has also filed several motions demonstrating his ability to navigate the Federal Rules of Civil Procedure and his responses to the defendants' motions contain comprehensible arguments. Additionally, after reviewing the pleadings, the court does not believe that this case is either so factually or legally complex at the present time as to warrant the appointment of counsel. Many of the relevant facts are within Brathwaite's personal knowledge, and the tools of written discovery should provide him with sufficient means to obtain the facts he requires to support his claims. Finally, the court finds that Brathwaite will not suffer prejudice if he is forced to prosecute this case on his own. Thus, the court will deny his motion at this time. (D.I. 81.)

**B. Protective Orders**

Brathwaite filed a Motion for Depositions to take the depositions of individuals who are employed by the DOC and assigned to the DCC. (D.I. 91.) None of the proposed deponents are parties to the case. At one time, Lt. Larry Savage, was a party defendant. He was dismissed by the court on July 17, 2006. *See* D.I. 77. Brathwaite also seeks the transcript of the deposition of

Gerron Lindsey taken by Deputy Attorney General Eileen Kelly. (D.I. 93.)

The State defendants responded to the motions by filing Motions for Protective Orders. (D.I. 92, 94.) They object to the request for depositions arguing that the proper method is for Brathwaite to subpoena the non-parties. They also contend that it is evident from Brathwaite's *in forma pauperis* status that he does not have the means to hire and pay a court reporter for the proposed non-party depositions. The State defendants also object to Brathwaite's request for a copy of Gerron Lindsey's deposition transcript. The defendants argue that Brathwaite is not entitled to a free deposition transcript. Also, they note that Lindsey's deposition was taken in a different *pro se* prisoner case, litigated by a different Assistant Attorney General, and it appears, in a case that Brathwaite was not a party. Brathwaite responds that the deposition transcript contains testimony by Lindsey regarding the alleged pepper spraying by Dunn. (D.I. 96.)

Brathwaite proceeds *pro se* and *in forma pauperis*. The court has no authority to finance or pay for a party's discovery expenses. *Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa.1991) (§ 1915 does not require the government to advance funds for deposition expenses); *Doe v. United States*, 112 F.R.D. 183, 184-85 (S.D.N.Y. 1986) (*in forma pauperis* statute does not require government to advance funds for deposition expenses); *Toliver v. Community Action Comm'n to Help the Econ.*, 613 F.Supp. 1070, 1072 (S.D.N.Y. 1985) (no clear statutory authority for the repayment of discovery costs for *pro se* in forma pauperis plaintiff); *Ronson v. Commissioner of Corr. for State of N.Y.*, 106 F.R.D. 253, 254 (S.D.N.Y. 1985) (indigent prisoner's motion to depose physician at corrections facility denied); *Sturdevant v. Deer*, 69 F.R.D. 17, 19 (E.D. Wis. 1975) (28 U.S.C. § 1915 "does not extend to the cost of taking and transcribing a deposition."); *Ebenhart v. Power,* 309 F.Supp. 660, 661 (S.D.N.Y. 1969) ("Grave

doubts exist as to whether Section 1915 authorizes this court to order the appropriation of Government funds in civil suits to aid private litigants in conducting pre-trial discovery."). Additionally, Brathwaite wishes to take the depositions of non-defendants. He cannot, without issuing subpoenas, and an inmate proceeding *in forma pauperis* in a civil action may not issue subpoenas without paying the required fees. *See Pedraza v. Jones*, 71 F.3d 194, 196 n.4 (5th Cir. 1995); *Fernandez v. Kash N' Karry Food Stores, Inc.*, 136 F.R.D. 495, 496 (M.D. Fla. 1991) (witness and mileage fees required to be paid by indigent plaintiff).

The taking of depositions would entail stenographic or court reporter expenses which this court is not authorized to pay. It is the plaintiff's responsibility to pay for the costs associated with the taking of depositions. Therefore, Brathwaite's Motion for Depositions is denied without prejudice. (D.I. 91.) The court will reconsider its ruling upon a showing by Brathwaite that he is able to pay the expenses for the taking of the depositions.

Brathwaite seeks inmate Lindsey's deposition transcript to support his claim against Dunn. Yet, the court is granting Dunn's Motion for Summary Judgment, and it appears that the deposition at issue is unrelated to the present case. Also, Brathwaite indicates that he has obtained a new affidavit from Lindsey. Finally, it does not appear that Brathwaite is able to pay for the transcript. Therefore, the court will deny the Supplemental Motion for Discovery. The State Defendants are placed on notice that, if they intend to use Lindsey's deposition transcript in this case, then they shall provide a copy of the transcript, at no cost, to Brathwaite. Based upon the foregoing, the court will grant the State defendants' Motions for Protective Orders. (D.I. 92, 94.)

### C. Miscellaneous Motions

Brathwaite's motion to expedite proceedings is actually a motion for injunctive relief to obtain dental treatment. The motion is denied without prejudice. (D.I. 83.) The motion has been pending since October 2006. If, as of the date he receives this memorandum, Brathwaite has not received the dental treatment requested, he is given leave to file a motion for injunctive relief.

Dunn's Motion to Strike is denied. (D.I. 89.) The court will consider all responses to Dunn's Motion for Summary Judgment filed by Brathwaite and will also consider the responsive argument contained in Dunn's Motion to Strike.

## VI. CONCLUSION

For the above stated reasons the court will deny Brathwaite's Motion to Appoint Counsel and will deny without prejudice the Motion to Expedite. (D.I. 81, 83). The court will grant State Defendant Dunn's Motion to Dismiss/Summary Judgment and will deny the Motion to Strike Reply Brief. (D.I. 84, 89). Finally, the court will grant the State defendants' Motions for Protective Order. (D.I. 92, 94). An appropriate order will be entered.



UNITED STATES DISTRICT JUDGE

June 21, 2007
Wilmington, Delaware

FILED
JUN 21 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1542 GMS |
| | ) |
| LT. MARCELLO RISPOLI, SGT. ROBERT WALLACE, SGT. MATT STEVENSON, SGT. STEPHANIE CARPENTER, and C/O V. DUNN, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

At Wilmington this 21st day of June, 2007, for the reasons set forth in the Memorandum issued this date

1. Brathwaite's Motion to Appoint Counsel is denied. (D.I. 81.)

2. Brathwaite's Motion to Expedite is denied without prejudice with leave to file a motion for injunctive relief. (D.I. 83).

3. State Defendant Dunn's Motion to Dismiss/Summary Judgment is granted. (D.I. 84.) The Clerk of the Court is directed to enter judgment in favor of Dunn and against Brathwaite.

4. State Defendant Dunn's Motion to Strike Reply Brief is denied. (D.I. 89).

5. State defendants' Motions for Protective Order are granted. (D.I. 92, 94).

UNITED STATES DISTRICT JUDGE

