IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN BRATHWAITE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 04-1542-GMS |
| | ) | |
| MARCELLO RISPOLI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF ROBERT WALLACE**

Sgt. Robert Wallace having been duly sworn according to law, deposes and states as follows:

1. I make this affidavit based upon personal information.

2. I am employed by the State of Delaware's Department of Correction as a Correctional Sergeant at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. I have worked for the DOC since June, 2002. My duties include supervising and participating in the maintenance of discipline, order, security and housekeeping of assigned locations and/or units. Additional duties include periodic shakedowns of buildings and cell blocks to detect contraband and defects in the security system.

3. I am not aware of a conflict between Brathwaite and me. Nor was I ever assigned to another building to avoid contact with Brathwaite. I worked in SHU 17 for over 2 years after Brathwaite filed the lawsuit against me. Brathwaite was assigned to my tiers at that time and there was never a problem of which I was aware. My departure

from SHU 17 was due to the fact that I went on medical leave in April, 2006. When I returned to work in October, 2006, I was initially assigned to the gatehouse and primary; less stressful positions since I was returning from medical leave.

4. Officers do not request which building they prefer to work but bid instead bid on shifts and days off. The bids are primarily based on shift times and days off. Administrative officials then make the final decision based on an officer's bid, skills and experience. In May, 2007, I was assigned to SHU building #17 as leadworker after being awarded a new bid with Fridays and Saturdays off on 4 X 12 shift. Brathwaite is housed on B tier in the same building. I normally work C and D tiers when the other building sergeant is on duty. I normally do not have to go on B tier unless there is a problem that needs to be handled by the leadworker.

5. I am the person that got Brathwaite hired for the position he presently holds. Brathwaite requested that I ask S/Lt. Taylor to allow him to be hired as tierman on B tier. This request was made when I worked an overtime shift in SHU 17. I am not aware of any talk of firing Brathwaite from his position. On June 25, 2007, I never stated to four other officers that I was not satisfied with Brathwaite's work and that he would soon be fired. This statement is totally false and possible grounds for Brathwaite losing his job. To hold a job an inmate must be trustworthy and to make false accusations against staff violates that trust. The only complaint that I have heard about Brathwaite from other officers is his tendency not to lock in when he finishes his job.

6. The mail is sorted out by the pod officer. My only connection with mail as leadworker is to pass it out to the inmates on my tiers, C & D. When inmates receive legal mail they must sign for it on the Incoming Legal/Certified Mail Log Sheet. There is

a box the inmate can check which indicates whether the legal mail delivered to him was "Opened in presence of inmate" or "Rec'd in Unit in Open Condition." There is also a "Comments" box where inmates are free to write comments. From the time I returned to SHU building #17 to the present date, the Incoming Legal/Certified Mail Log Sheet indicates that Brathwaite received numerous legal mail and that only on one occasion, June 22, 2007, did he check the box "Opened in presence of inmate." In the "Comments" box, Brathwaite never wrote anything. I have never opened Brathwaite's personal mail or legal mail outside his presence, nor have I ever tampered with his mail.

_____
Robert Wallace

SWORN TO AND SUBSCRIBED before me this __16__ day of July, 2007.

_____
Notary