IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1542 GMS |
| | ) |
| LT. MARCELLO RISPOLI, SGT. | ) |
| ROBERT WALLACE, SGT. MATT | ) |
| STEVENSON, and SGT. STEPHANIE | ) |
| CARPENTER, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

**I. INTRODUCTION**

The plaintiff, Kevin Brathwaite ("Brathwaite"), a prisoner incarcerated at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Brathwaite alleges that Lt. Marcello Rispoli ("Rispoli"), Sgt. Robert Wallace ("Wallace"), Sgt. Matt Stevenson ("Stevenson"), and Sgt. Stephanie Carpenter ("Carpenter") (collectively "State defendants") violated his Eighth Amendment rights. (D.I. 2.) More specifically, Brathwaite alleges that he was assaulted by the defendants on three separate occasions. Other defendants were also named by Brathwaite, but the claims against them have been dismissed. (*See* D.I. 63, 65, 77, 84, 105.)

Now before the court are State Defendants Wallace, Stevenson, Carpenter, Rispoli and Dunn's[1] Motion for Summary Judgment and two Motions for Injunctive Relief filed by

---

[1] The court dismissed the claims against Dunn and therefore the motion for summary judgment is moot as to the claims against her. (D.I. 105.)

Brathwaite (D.I. 109, 110). For the reasons that follow, the court will deny Wallace, Stevenson, and Carpenter's Motion for Summary Judgment (D.I. 102), will grant Rispoli's Motion for Summary Judgment (D.I. 102), and will deny Brathwaite's Motion for Temporary Restraining Order (D.I. 109) and Motion for Injunctive Relief (D.I. 110).

## II. BACKGROUND

The allegations of the claims that remain are that the State defendants violated Brathwaite's constitutional rights when they used excessive force on three separate occasions. Brathwaite alleges the first use of excessive force occurred on October 9, 2004, at approximately 9:00 a.m., when during a search of his cell, Wallace sprayed Brathwaite with capstun even though Brathwaite did not pose a threat. *Id.* Brathwaite alleges that when he was being handcuffed behind his back he did not resist or struggle but Wallace and Stevenson threw him on the ground and began to kick, punch and stomp him. *Id.*

Brathwaite alleges the second use of excessive force occurred on the same date after he was placed in "the hole" and asked to speak to someone. *Id.* He alleges that when it became clear no one was going to help, he attempted to hang himself with a sheet. *Id.* Brathwaite alleges that Carpenter stood outside his door, opened the door, and instead of ordering the officers with her to help him, capstunned Brathwaite in the face. *Id.*

Brathwaite alleges the last use of excessive force occurred on October 22, 2004, when Rispoli and several other unnamed officers assaulted him. *Id.* Brathwaite alleges that while housed in the infirmary, he was awakened by four officers at 11:40 p.m., ordered to come to his cell door, and turn around to be handcuffed so his cell could be searched. *Id.* Brathwaite alleges that the only officer he recognized was Rispoli. Brathwaite alleges that after he was handcuffed

three of the four officers assaulted him. *Id.*

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

IV.   **DISCUSSION**

   A. **Excessive Force**

Defendants Wallace, Stevenson, and Carpenter move for summary judgment on the issue of excessive force. They argue that any force used was justified under the circumstances, was *de minimis,* and did not constitute cruel and unusual punishment under the Eighth Amendment.

Whenever a plaintiff claims that a prison official used excessive physical force, thus violating the cruel and unusual punishment clause, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Brathwaite does not have to demonstrate serious injury, although the extent of injuries suffered is a factor in determining whether the use of force was necessary or not. *Hudson,* 503 U.S. at 7. *See also Brooks v. Kyler,* 204 F.3d 102, 104 (3d Cir. 2000) (holding that there is no fixed minimum quantum of injury that a prisoner must prove he suffered through either objective or independent evidence in order to state a claim for excessive force). Other factors considered in determining whether the use of force was wanton and unnecessary include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson,* 503 U.S. at 7 (quoting *Whitley, Whitley v. Albers,* 475 U.S. 312, 321 (1986).

Wallace avers that he was conducting a strip search of Brathwaite the morning of October 9, 2004. (D.I. 103, Ex. A.) Wallace avers that when Brathwaite was down to his underwear, a razor dropped out of what appeared to be a pocket in Brathwaite's underwear. (*Id.*) Wallace ordered Brathwaite to remove his underwear, but Brathwaite refused. (*Id.*) Brathwaite also

refused a second order. (*Id.*) Wallace ordered Brathwaite to get dressed and told him he would be taken to see the Lieutenant for refusing to comply with the strip search. (*Id.*) Wallace avers that Brathwaite charged toward the cell door and he was able to get between the doorframe and the cell door with his right arm and shoulder. (*Id.*) Wallace avers that when he attempted to push Brathwaite's arm back into the cell, Brathwaite threw a punch at Wallace. (*Id.*) Wallace avers that he then sprayed Brathwaite with capstun and Brathwaite backed away from the door. (*Id.*) Wallace avers that he called for back-up and while waiting for back-up, Brathwaite took something from his underwear, placed it in his mouth, and appeared to swallow it. (*Id.*)

Sgt. David Phillips ("Phillips"), Stevenson, and Gregory Turner ("Turner") responded to the back-up call. (D.I. 103, Ex. B, D.I. 111, Ex. A.) Wallace and Stevenson aver that as Brathwaite was leaving his cell when he turned around to be handcuffed, he attempted to strike Phillips. (D.I. 103, Exs. A, B.) Wallace avers that he grabbed Brathwaite around his shoulder and free arm and that he, Stevenson, Phillips and Edwin Nkowpara ("Nkowpara") brought Brathwaite to the floor. (D.I. 103, Exs. A, B.) Wallace avers that he and Phillips were on the upper half of Brathwaite's body and Nkwopara and Stevenson were on the lower half. (*Id.*) Brathwaite was handcuffed and shackled. (*Id.*) Turner avers that Brathwaite was confrontational when an attempt was made to remove Brathwaite from his cell, and this resulted in Brathwaite being taken to the ground, handcuffed, and shackled. (D.I. 111, Ex. A.) Wallace avers that the amount of force needed to subdue Brathwaite was necessary. (D.I. 103, Ex. A.) He avers that at no time did he, or any of the officers present, kick Brathwaite in the back of his head or stomp on his back. (*Id.*) Brathwaite contends he was assaulted by Wallace and Stevenson and sustained injuries. (D.I. 104.)

Brathwaite was escorted to the security housing unit ("SHU") by Phillips, Stevenson, Nkwopara, and Wallace. (D.I. 103, Exs. A, B.) There, Brathwaite was examined by a nurse who applied milk to alleviate the effects of the capstun. (*Id.*) Brathwaite complained of minimal left elbow pain, but had full range of motion. (D.I. 103, Ex. C.) Brathwaite had no further complaints. (*Id.*) Phillips and Stevenson escorted Brathwaite to another cell, without further incident. (D.I. 103, Ex. B.)

Following his removal to SHU, Brathwaite's cell was searched, but no contraband was found. (D.I. 103, Ex. A.) Brathwaite received disciplinary reports for assault, disorderly or threatening behavior, possession of dangerous contraband, creating a health, safety or fire hazard, disrespect, failing to obey an order, and possession of non-dangerous contraband. (*Id.*)

Brathwaite states that he was provided a razor for shaving and was shaving just a few seconds before he was assaulted. (D.I. 104.) He states that the defendants tried to make the razor look like a weapon. (D.I. 104) He states that he was kicked in the head and stomped on the back by Wallace and Stevenson and this was witnessed by Turner. (*Id.*)

Brathwaite was examined a second time after he complained of testicular pain. (D.I. 103, Ex. F.) Medical records indicate that Brathwaite appeared in no discomfort until examined. (*Id.*) Brathwaite had a small hematoma over the right lower lip consistent with bite trauma and a small abrasion on the upper left lip. (*Id.*) The medical notes state that Brathwaite appeared to exaggerate his complaints of pain. (*Id.*) During the examination, Brathwaite complained that he had been handcuffed behind his back which caused a shoulder dislocation and cracked ribs from being kicked, left elbow pain, loose teeth from being punched in the mouth, and a left eyebrow contusion from being struck. (*Id.*) Brathwaite asked to go to the infirmary, but it was not

medically necessary. (*Id.*)

Carpenter avers that at 10:00 p.m. on the evening of September 9, 2004, she was informed by officers on the tier that Brathwaite had tied a bed sheet to his ceiling light and was putting the other end around his neck. (D.I. 103, Ex. E.) Carter avers that she immediately ordered control to open Brathwaite's cell door. (*Id.*) She says that as soon as the cell door opened, Brathwaite lunged at her, so she grabbed her capstun and sprayed Brathwaite in the face. (*Id.*)

Rispoli received a report around 10:20 P.M. that evening that Brathwaite had attempted to hang himself. (D.I. 103, Ex. J.) Medical notes indicate that Brathwaite admitted to Rispoli that he was not suicidal, but wanted to return to the infirmary for his shoulder. (D.I. 103, Ex. F.) Brathwaite was returned to his cell. (D.I. 103, Ex. J.) Approximately one hour later, Rispoli was called back to the building with a report than an inmate was cutting himself. (*Id.*) At that time Brathwaite told Rispoli that he was going to do the same thing because he was not going to do any isolation time. (*Id.*) Brathwaite was later transferred to the infirmary for a Level 2 suicide watch. (D.I. 103, Ex. F.)

Once he was admitted to the infirmary, Brathwaite complained of left rib pain. (D.I. 104, Ex. E.) Examination revealed bruising (i.e., ecchymosis) on the back and left side with no open wounds, but abrasions on the upper and lower lips. (*Id.*) Brathwaite was in a stable condition. (*Id.*) Progress notes dated October 11, 2004, describe Brathwaite's injuries as follows: "schlera of left eye with blood viable. Ecchymosis noted on posterior tibia bilaterally. Area on right tibia approximately 3 cm by 5 cm, left tibia 3 cm by 3 cms, ecchymosis noted on upper back. Ecchymosis on left bicep measuring approximately 5 cm by 5 cm. Inmates states upper two teeth

are loose, states three lower teeth are loose. Abrasions with swelling noted on both upper and lower lip. Inmates states ribs are sore . . . . Inmate's left mandible area appears slightly swollen compared to right. Area on right upper arm has abrasion measuring approximately 6 cm by 4 cm." (*Id.*)

Brathwaite argues that he was verbally, not physically, abusive towards the officers. (D.I. 113). He argues that, because he is an inmate, he is unable to obtain affidavits from correction officers to support his position. (*Id.*) Brathwaite argues that Wallace has a history of assaulting inmates while they are shackled and handcuffed and submitted affidavits from four inmates who claim they were assaulted by Wallace. (D.I. 104, Exs. A-D.) Brathwaite contends that the defendants have manipulated evidence and cites as an example that the defendants only provided the first page of a medical report which left out details of Brathwaite's injuries. Brathwaite argues he suffered numerous injuries and made repeated attempts to have photographs taken, to no avail. He also argues that he has unsuccessfully sought to have his teeth repaired which were damaged as a result of the assault. Finally, Brathwaite argues that Carpenter's affidavit and report are complete fabrications and that she sprayed him with capstun for absolutely no reason. (D.I. 104.)

The court construes the facts and inferences in the light most favorable to plaintiff, the non-moving party. In general, a party opposing a summary judgment motion may not simply "rest upon mere allegations, general denials, or [ ] vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). However, the Third Circuit has recognized that *pro se* inmates are situated differently from typical parties opposing summary judgment. "[A]n inmate who is proceeding *pro se*, is in a decidedly difficult position from which to generate 'record evidence' in

his behalf . . . [u]nder these circumstances, his affidavits . . . are about the best that can be expected from him [at summary judgment phase of] the proceedings." *Brooks v. Kyler,* 204 F.3d 102, 108 n.7 (3d Cir. 2000) (citations omitted).

The court finds that there remain genuine issues of material fact as to the excessive force claims raised against Wallace, Stevenson, and Carpenter. Brathwaite contends that he was not physically threatening to Wallace, yet Wallace capstunned him. Brathwaite contends that Wallace and Stevenson assaulted him, while Wallace and Stevenson contend that they brought Brathwaite to the ground after he attempted to strike another officer. While Turner states that Brathwaite was confrontational when the correction officers tried to remove him from his cell and this why he was taken down, handcuffed, and shackled, his affidavit does not state the Brathwaite acted in a physical manner towards the correction officers. Additionally, the medical records indicate that Brathwaite sustained numerous injuries as a result of the altercation, and it was only upon his insistence that details of his injuries were placed in his medical record. Carpenter avers that she capstunned Brathwaite, when he attempted to hang himself, because he lunged at her, but Brathwaite states he was capstunned by Carpenter for "absolutely no reason." Finally, Wallace contends that the amount of force used was necessary.

There remain genuine issues of material fact as to whether the force at issue was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Therefore, the court will deny Wallace, Stevenson, and Carpenter's motion for summary judgment.

### B. Punitive Damages

Brathwaite alleges that Rispoli entered his cell on October 22, 2004, and physically

assaulted him. In a prior order, the court concluded that Brathwaite's complaint did not allege any physical injury arising out of the October 22, 2004 claim and gave Brathwaite leave to amend, should he so choose. Brathwaite did not file an amended complaint. Nonetheless, as previously noted by the court, Brathwaite's claim for punitive damages is not barred by 42 U.S.C. § 1997e(e).

A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Punitive damages should not be awarded unless the defendant's conduct has been "particularly egregious" with the defendant having acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so. *Conchetti v. Desmond,* 572 F.2d 102, 105-106 (3d Cir. 1978). Punitive damages are not to be awarded unless there is a showing that the prescribed action has been a constant pattern or practice of behavior of the defendant and that such practice has been willful and disregards the rights of the plaintiff. *Urbano v. McCorkle,* 334 F. Supp. 161, 170 (D.N.J. 1971).

Rispoli contends that he is entitled to summary judgment on the issue of punitive damages. Rispoli avers that he was not assigned to the infirmary on October 22, 2004, the date Brathwaite alleges he was assaulted by Rispoli in the infirmary. (D.I. 103, Ex. J.) Logbook entries for October 22, 2004, do not indicate that Rispoli was on duty in the infirmary. (*Id.*) Nor is there any mention of an occurrence in the infirmary on that date. (*Id.*) Rispoli argues that he cannot be punished for willful or malicious conduct since he was not present during the time that Brathwaite alleges the assault occurred. Brathwaite argues that because of Rispoli's position he

is able to go wherever he chooses. He notes that although Rispoli was not on duty in the infirmary on October 11, 2004, he was still able to have a conversation with Brathwaite, thus inferring that he could also have been in the infirmary on October 22, 2004.

Brathwaite makes inferences to support his position that Rispoli could have been present in the infirmary on October 22, 2004, when Brathwaite was allegedly assaulted. Brathwaite has not, however, refuted Rispoli's affidavit that he was not present in the infirmary on October 22, 2004. Nor is there any evidence in the record for a jury to find that Rispoli acted with the malice, intent, and evil thought requisite to an award of punitive damages. Therefore, the court will grant Rispoli's motion for summary judgment as to this issue.

## V.  MOTIONS FOR INJUNCTIVE RELIEF

### A. Standard of Review

When considering a motion for a temporary restraining order or preliminary injunction, the plaintiff must demonstrate that he is (1) likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and, (4) granting the injunction is in the public interest. *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1997). "[A]n injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights," *Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)(quoting *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985).

### B. Motion for Temporary Restraining Order

Brathwaite moves for a restraining order to preclude Wallace from having any contact with him. (D.I. 109.) Brathwaite is housed in SHU. He states that Wallace was reassigned to a different building to avoid contact with him because of a history of conflict between the two. Recently, Wallace was reassigned to return to the building where Brathwaite is housed. Brathwaite alleges that Wallace is attempting to have him fired from his prison job, and that since Wallace's reassignment, there has been tampering with his legal and personal mail. Also, Brathwaite does not know if there is tampering with his outgoing mail or if it is being mailed. Brathwaite states that he does not want any problems with Wallace and, therefore, asks for a no contact order with Wallace.

The defendants oppose the motion and argue that it consists of conclusory and patently false allegations. They contend that Brathwaite has not met his burden to prove a likelihood of success on the merits. More particularly, the defendants respond that Wallace's transfer from Brathwaite's building was due to medical leave, not a conflict between the two of them, and Wallace has never been transferred to another area of the prison to avoid contact with Brathwaite. (D.I. 112.) Wallace is responsible for the hiring of Brathwaite at his current prison job, and Wallace has no complaints with Brathwaite's job performance. Finally, the defendants argue that the allegations regarding Brathwaite's legal mail are false. The defendants note that the logbook where Brathwaite is housed reflects that Brathwaite signed for all of his legal mail, and never complained about the condition of his mail.

Where a plaintiff requests an injunction that would require the court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of

federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). The federal courts are not overseers of the day-to-day management of prisons, and the court will not interfere in the Department of Correction's determination where to assign correction officers. Therefore, the court will deny his motion for a restraining order.

### C. Motion for Injunctive Relief

Brathwaite moves for injunctive relief to receive proper medical treatment for injuries that he alleges are a direct result of the assault that took place on October 9, 2004. (D.I. 110.) Brathwaite alleges that he has been told he is in need of a root canal to correct damage to his front teeth and that the only way he can receive the treatment is upon approval of the warden. Brathwaite alleges that he was seen by a dentist on June 5, 2006, who told him that the injury had been untreated for so long that an infection had developed. He alleges that as of January 3, 2007, the warden had yet to approve the root canal. Brathwaite asks for injunctive relief to receive a proper root canal and any other necessary cosmetic procedures. Brathwaite contends that the bruises he suffered to his mouth are evidence of an assault and this "reaggrivated" his tooth abscess.

Attached to his motion are copies of grievances filed in an effort to obtain dental treatment. A decision was rendered on February 6, 2007, stating that "grievant needs dental care

(fillings and root canal.) The decision was upheld on March 12, 2007.

The defendants oppose the motion arguing that Brathwaite cannot succeed on the merits. (D.I. 114.) They argue that Brathwaite offers no evidence to support his claim that the alleged October 9, 2004 assault has any connection with a root canal diagnosis. They argue that dental records indicate that Brathwaite was aware of his dental problems prior to the alleged October 9, 2004 assault. They refer to 2001 dental records that Brathwaite was given the option of having the tooth at issue extracted because a root canal is not an approved procedure, but Brathwaite refused to have the tooth extracted. *Id.* at Ex. D.

Dental records indicate that Brathwaite received a dental examination and tentative dental plan on July 23, 2007. *Id.* at Ex. E. The examination revealed a need for three fillings, mild to moderate periodontal disease, a need for dental scaling, and chronic periapical pathology indicating a necrotic pulp and a need for a root canal or extraction. *Id.* The dental records state that the "treatment plan is based on the dental parameters that CMS has provided" but that "'ideal'" treatment, such as fixed crowns, bridges, and periodontal surgery, etc. are beyond the scope of what CMS provides. *Id.* Brathwaite argues that the report is not signed as it should be. (D.I. 15.)

Initially the court notes that there is a genuine dispute over whether Brathwaite's dental condition is a result of the alleged October 9, 2004 assault. Moreover, the dental records indicate that Brathwaite will receive dental treatment, albeit not "ideal treatment". Therefore, denial of the motion will not result in irreparable harm. Nor does it appear that, based upon the facts before the court at this time, that Brathwaite will succeed on the merits.

## VI. CONCLUSION

For the above stated reasons the court will deny State defendants Wallace, Stevenson, and Carpenter's Motion for Summary Judgment (D.I. 102), will grant Rispoli's Motion for Summary Judgment (D.I. 102), and will deny as moot Violet Dunn's motion for summary judgment (D.I. 102). The court will deny Brathwaite's Motion for Temporary Restraining Order (D.I. 109) and Motion for Injunctive Relief (D.I. 110). An appropriate order will be entered.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

Feb 20, 2008
Wilmington, Delaware

FILED
FEB 20 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEVIN C. BRATHWAITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1542 GMS |
| | ) |
| LT. MARCELLO RISPOLI, SGT. ROBERT | ) |
| WALLACE, SGT. MATT STEVENSON, | ) |
| and SGT. STEPHANIE CARPENTER, | ) |
| | ) |
| Defendants. | ) |

## ORDER

At Wilmington this 20th day of Feb., 2008, for the reasons set forth in the Memorandum issued this date;

1. The defendants Sgt. Robert Wallace, Matt Stevenson, and Sgt/ Stephanie Carpenter's motion for summary judgment (D.I. 102) is **denied**, the defendant Lt. Marcello Rispoli's motion for summary judgment is **granted**, and C/O V. Dunn's motion for summary judgment (D.I. 102) is **denied** as **moot**.

2. The plaintiff's motion for temporary restraining order (D.I. 109) is **denied**.

3. The plaintiff's motion for injunctive relief (D.I. 110) is **denied**.

_____
CHIEF, UNITED STATES DISTRICT JUDGE



FILED

FEB 20 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE